DENZINGER ET AL. *v.* EXECUTIVE BOARD OF THE "CHARLIE B. WELLS MEMORIAL" ET AL.

[No. 19,457. Filed May 15, 1961.]

*Mead & Mead,* of Salem, for appellants.

*Allen & Thompson,* of Salem, for appellees.

KELLEY, J.—On March 5, 1942 one George W. Wells died testate. His will, executed by him on March 30, 1937, was duly admitted to probate. It consisted of sixteen (16) items. The only item of interest in this proceeding, being Item XV., reads as follows:

> "ITEM XV. All the residue of my property I give and bequeath to The American Legion Posts of Washington County, Indiana, to be used by them in erecting a memorial building to the memory of my son, Charlie B. Wells, who died in the service during the World War, said memorial building to be erected in the City of Salem, Indiana, and to be used by said legion posts, legion auxiliary organizations, junior auxiliary organizations, squadrons of the sons of the American Legion, and other kindred organizations now or hereafter organized. Said building shall be known as the "Charlie B. Wells Memorial," and shall be managed and controlled by an executive board selected by said organizations, each organization to have representation on said board based on the number of bona fide members in such organization."

The executor of said will of said decedent filed his final report of the estate proceedings, showing charges and credits, and containing the following statement:

> "He further says that the residue of said estate, after the payment of certain specific bequests, which residue is in the amount of $9,728.27, is be-

queathed under Item XV of said will, to the American Legion Posts of Washington County, Indiana, which residue he has paid to the Clerk of the Washington Circuit Court for the use of said Posts as outlined in Item XV of said will."

Said final report was approved on November 12, 1942 and the estate ordered closed and the executor discharged.

Several steps and proceedings taken with reference to the erection of a "Charlie B. Wells Memorial" as provided for in said Item XV. of decedent's said will are not pertinent to the question here presented and will not be further noticed.

On March 29, 1959 the appellees presented to the trial court a petition to expend moneys under said Item XV. of said will and a plan for the use of said money "whereby the interest and purpose of said will can be carried out in the manner designated therein, which plan" has been approved and adopted by the Executive Board of said Charlie B. Wells Memorial, by each of the presently existing American Legion Posts in Washington County, Indiana, and by the Board of Building Trustees of the Cecil Grimes Post No. 41, American Legion.

In substance, the submitted plan provided that the Executive Board purchase from the said Cecil Grimes Post No. 41, American Legion, the "first floor" of a "basement and one story" building located in Salem, Indiana, for the sum of $13,000.00; that the property so acquired be designated as the "Charlie B. Wells Memorial" by permanent letters on the top and coping of said building and by bronze or metal plaques installed in the building; that said "building" be leased to said Cecil Grimes Post No. 41 for a period of 99 years under the terms and provisions of a proposed

lease which would contain, inter alia, covenants for the keeping and maintenance by the said lessee of the building in a sufficient state of repair; that the said lessee would keep the same insured, in an amount not less than $13,000.00, together with public liability insurance; said lessee to pay all light, water, heat and other utility bills, to furnish janitor service and pay taxes of every kind, to pay any and all liens which may be created against the property; that said lessee shall have the right, privilege, and use of the premises except that the same shall at all times be used free of charge by the Legion Posts of Washington County, Indiana, the Legion Auxiliary organizations, Junior Auxiliary organizations, Squadrons of Sons of the American Legion, and kindred organizations; that the leased property shall be managed and maintained so as to comply with the conditions of said Item XV. of the will of said decedent, with full authority in the Executive Board to determine whether the leased property is being used in such way as to comply with said provisions and, if not, to terminate the lease by the giving of a 90-day written notice.

Subsequent to the filing of said petition and plan by appellees, the appellants filed their petition to intervene in the cause. The intervening petition, in substance, alleged that the appellants were the "nearest relatives" of the decedent and that they are "opposed" to the use and disposal of the Funds as prayed for in appellees' petition; that the proposed use of said Funds is not in accord with the intention of the decedent expressed in said Item XV.; that appellants desire to be made parties for the purpose of having determined the matter of the proper disposal of said "Memorial Funds." Attached to the intervening petition is an affidavit by appellant, Richard Karnes, alleging facts showing the relationship

of appellants to decedent (from all of which it appears that appellants are, respectively, the grandniece and grandnephews of the decedent) ; and that there is no other relative nearer in relationship to decedent than appellants.

The petition sets up no facts, other than stated above, which tend to show any interest in appellants in the subject matter of the action adverse to appellees nor are any facts alleged or showing made that appellants are necessary parties to the action. Appellants' petition to intervene was denied and the court thereupon entered judgment ratifying and confirming the plan proposed by appellees and authorizing the Executive Board to carry the same into full effect and execution.

Appellants assign that the court erred in denying their petition to intervene. They say: "In denying appellants' said petition the appellants think the court clearly abused its discretion." They cite §2-219, Burns' 1946 Replacement, to the effect that "Any person may be made a defendant who has, or claims, an interest in the controversy adverse to the plaintiff, or who is a necessary party to a complete determination or settlement of the question involved." Also that part of §2-222, Burns' 1946 Replacement, which provides that ". . . when a complete determination of the controversy cannot be had without the presence of other parties, the court must cause them to be joined as proper parties." Appellants make no effort to bring themselves within the terms of the statutes they cite. They do not claim that they have or claim an interest in the controversy adverse to appellees, or that they are necessary parties to a complete determination or settlement of the question involved, or that a complete determination of the controversy cannot be had without their presence.

Appellants aver in argument that they are the nearest living relatives of the decedent and would have been heirs to his estate had he died intestate; that "they are not seeking any portion of said estate for themselves, but are only seeking to have the said memorial fund used as the decedent intended in his will"; that "The interest they have in this case is greater than any financial interest"; that here "we have a memorial to protect. We think we might say a sacred fund to protect—the greater part of the George W. Wells Estate, his life time savings." The only allegation in appellants' petition to intervene concerning their foregoing stated interests in the subject matter is that "said proposed use of said funds is not in accord with the intentions of the Testator as expressed in Item 15 of his Will." No facts or particulars are alleged to sustain their said conclusion.

Appellants proceed to contend in argument that since the allegations of their petition to intevene were not contested by appellees and since their petition was verified, the allegations thereof must be accepted as true; and, if so accepted, it was "an abuse of discretion on the part of the trial court to refuse petitioners the right to intervene." However, it seems to be overlooked in such advanced precept that, as has been noted, the petition contained no averred facts which could be accepted as true. Even if it be assumed that said single conclusion contained in said petition constitutes an allegation of fact there yet remains an insufficiency of particularized facts upon which to judicially declare an abuse of discretion in the action of the trial court in denying the said petition.

Appellants close their argument upon the premise that "In this country our courts are open to everyone" and that if the "appellees are right in their position why

fear intervention, and if they are wrong then they do not have the right to shut out the intervenors." This *argumentum*, however, appears to be a *petitio principii*. The enquiry is not on the premise that appellees are "wrong" and, being "wrong," the appellant petitioners should be permitted to intervene in the action. If such were the criterion of the right to intervene, then would it be that strangers to any action would always be entitled to intervene therein on the asserted ground that the proponent parties thereto were "wrong" in their premise or procedure. Rather does it seem that the real question is whether the trial court has abused its discretion in denying the petitioners the right to intervene in the cause. And this determination must rest upon the adequate showing by the petitioners that they possessed a right of intervention which was denied them by the court.

Adverting again to the aforementioned statutes cited and relied upon by appellants, we find, first, under the provisions of said §2-219, Burns' 1946 Replacement, that any person *may be made* a defendant *who has, or claims, an interest* in the controversy *adverse to the plaintiff*. Appellants here make no showing that they come within said last mentioned statutory provisions. Second, under the provisions of said §2-222, Burns' 1946 Replacement, we find that when a complete determination of a controversy can not be had without the presence of other parties, the court must cause them to be joined as proper parties and that when, in an action for the recovery of real or personal property,

> "a person not a party to the action, but *having an interest in the subject thereof,* makes application to the court to be made a party, it *may* order him to be made a party by the proper amendment." (Emphasis supplied.)

Appellants have not shown that their presence was necessary for a complete determination of the controversy nor that they have an "interest" in the subject thereof. The said word "interest," as used, possessed not the connotation of a passing or casual concern, or a matter of sympathy or curiosity. As used in the statute said word rather imports a property interest, a right or interest capable of measurement and of such definitude as to possess the substance for judicial enforcement. "But the word 'interest' seems generally to have been considered as referring to some property interest; perhaps because the cases in which the intervention has been sought involve property rights." *Dodd* v. *Reese* (1940), 216 Ind. 449, 456, 24 N. E. 2d 995, 128 A. L. R. 574. Here the appellants have exhibited no "interest" in the subject matter of the action, within the meaning of the word "interest" as used in said §2-222, Burns' 1946 Replacement. They demonstrate no interest under the will of the decedent and no interest in the Memorial Fund. They appear devoid of any judicially enforceable interest in any matter or thing directly or indirectly connected with the matter before the court.

Insofar as appears from the record before us, any judgment or character of judgment or disposition the trial court has, may or could make with reference to the subject of appellees' petition, would in no wise affect appellants nor any right or interest they may assume to possess. It could, perhaps, be said that under the circumstances here appearing the herein involved intervening petition holds within itself an expression of indirect or implied lack of confidence by appellants in the capability of the trial court to properly and soundly exercise its judicial functions in regard to the Memorial Fund without the aid and assistance of appellants. They assert, for instance, in their brief, that "great

wrong and injustice could result from a refusal to permit them to intervene." They quote from the case of *Davidson et al.* v. *Grosskopf et al.* (1958), 128 Ind. App. 612, 150 N. E. 2d 685, and say that said case stated "further that a refusal to permit parties to intervene might be a travesty on justice" (Quotation from appellant's brief). The statement, as taken from appellants' brief, is not the statement found in the said Grosskopf case. The circumstances to which the court was referring in that case bear no resemblance to the circumstances in the present case before us. There can be no doubt that such circumstances may exist with reference to the property rights and interests of parties seeking to intervene that, as the court in the Grosskopf case pointed out, to hold that they are not necessary and proper parties "would seem to amount to a travesty on justice," but such circumstances make no appearance in the case at hand.

The intervention of a new party in an action is not a matter of right but is subject to the sound discretion of the trial court, *State ex rel. Tomlinson* v. *Jeffrey* (1952), 231 Ind. 101, 103, 107 N. E. 2d 1, and there is no absolute right to intervene, except as provided in said §2-222, *supra*, and the decisions in interpreting the same. *Davidson et al.* v. *Grosskopf et al., supra*.

The judgment is affirmed as to the action of the court in denying appellant's petition to intervene.

Pfaff, P. J., and Bierly and Gonas, JJ., concur.

NOTE.—Reported in 174 N. E. 2d 588.