Annie Lenora SHANNON, Appellant,

v.

UNITED STATES of America and Prudential Insurance Company of America, Appellees.

No. 25074.

United States Court of Appeals
Fifth Circuit.

Oct. 7, 1969.

Vincent McCauley, Columbus, Ga., for appellant.

Kirk McAlpin, Atlanta, Ga., Albert W. Stubbs, Columbus, Ga., Morton Hollander, Jack H. Weiner, Leonard Schaitman, Attys., Dept. of Justice, Washington, D. C., for appellees.

Before JOHN R. BROWN, Chief Judge, and AINSWORTH and GODBOLD, Circuit Judges.

GODBOLD, Circuit Judge:

This is an appeal from the district court's dismissal of a suit against the United States and Prudential Life Insurance Company. The suit arises from a dispute over the proceeds of insurance coverage on the life of a soldier, provided under a group policy purchased from Prudential by the Administrator of Veterans Affairs under the Servicemen's Group Life Insurance Act, 38 U.S.C. § 765 et seq. The district court dismissed the Amended Complaint, holding that the United States was not a proper party because the claim asserted against

it was not one for which the United States had consented to be sued under 38 U.S.C. § 775, and that dismissal as to it required dismissal of the claim against Prudential for lack of jurisdictional amount.

We reverse.

The Act provides for purchase by the Administrator of policies of group life insurance on the lives of members of the uniformed services[1] on active duty. Monthly deductions are made from the pay of the insured for the cost of his coverage except costs traceable to the extra hazard of active duty. The latter costs are paid by contributions from the Administrator.

Section 770(a) of the title covers beneficiaries and payment of insurance:

(a) Any amount of insurance under this subchapter in force on any member or former member on the date of his death shall be paid, upon the establishment of a valid claim therefor, to the person or persons surviving at the date of his death, in the following order of precedence:

First, to the beneficiary or beneficiaries as the member or former member may have designated by a writing received in the uniformed services prior to such death;

Second, if there be no such beneficiary, to the widow or widower of such member or former member;

Third, if none of the above, to the child or children of such member or former member and descendants of deceased children by representation;

Fourth, if none of the above, to the parents of such member or former member or the survivor of them;

Fifth, if none of the above, to the duly appointed executor or administrator of the estate of such member or former member;

Sixth, if none of the above, to other next of kin of such member or former member entitled under the laws of domicile of such member or former member at the time of his death.

The insured, Jesse E. Shannon, became insured in September 1965 under a group policy purchased by the Administrator from Prudential. In December 1965 he completed the government Form DA 3054, "Election of Amount, Beneficiary Designation and Settlement Options for Servicemens' Group Life Insurance." Thereon he exercised several choices. He elected to retain the full coverage of $10,000 (which is automatic unless disclaimed). He chose a lump-sum settlement option. He elected a beneficiary provision to "have payment made in the order of precedence set forth in the law."

Shannon was killed in Viet Nam June 11, 1966. The Army sent to Prudential a completed Report of Casualty form dated June 17, 1966, described thereon as an "Interim" report. Under "Interested Persons" it described Sharon Shannon as decedent's wife. There were two footnotes to the word "wife." One stated (without qualifying language) "adult of kin," the other "beneficiary for unpaid pay and allowances, as designated on record of emergency data." The section of the form relating to Group Life Insurance showed the amount of coverage and the settlement option and described the beneficiary designation as "To be determined according to law." And it stated "Claim for death benefits mailed to wife." The record does not disclose the nature and contents of the claim, whether it was filed with Prudential by Sharon Shannon, or whether Prudential requires from the person described as beneficiary any proof other than the data coming from the Army.

The policy proceeds were paid to Sharon around July 7. Prudential states that the basis of its payment was the election of beneficiary form described above, which under the order of prece-

---

[1]. Army, Navy, Air Force, Marine Corps, Coast Guard, Public Health Service, and Environmental Science Services Administration, 38 U.S.C. § 765(3).

dence set out in the law made the proceeds payable to the wife, and the Report of Casualty form listing Sharon Shannon as wife. The Army paid Sharon the gratuity pay payable by reason of Shannon's death and issued to her a Dependent's Identification and Privilege card.

A "Final" Report of Casualty form appears to have been prepared on July 18, 1966. In late July appellant made known to the Army her claim. A "Corrected Final" Report of Casualty was prepared August 26. It shows the conflicting claims of appellant and Sharon and refers to a possible bigamous marriage.

The appellant sued, alleging that she is the widow of Shannon, and claiming judgment in the amount of $10,000 against the United States and Prudential, or either. Appellant's marriage certificate shows her to have been married to Shannon in 1961. Examination by the Army of its records, and an investigation by it, have disclosed that in 1963 Shannon executed an Army Record of Emergency Data Form showing that he was married to appellant. Army finance records show Shannon's marriage to appellant in 1961 and that he was still married to her at the time of his death. For an undisclosed period of time before his death, and at the time he was killed, Shannon had in effect an allotment payable to appellant as his wife, for the basic quarters allowance for an enlisted man in his grade with two dependents. Allotment checks were mailed to appellant at an address in Columbus, Georgia. On December 31, 1965, Shannon went through a purported marriage ceremony with Sharon Jenne in New York. On January 14, 1966, he filed with the Army another Record of Emergency Data form showing Sharon Shannon as his wife. The same date he executed and filed a separate form, Application for Allotment, showing Sharon Shannon as his sister. Both forms gave the same address for Sharon. The government received no information showing a divorce between appellant and Shannon.

The thrust of the claim against the government is that there existed a duty on its part, either cast on it by the Act or voluntarily assumed by it, to maintain its records accurately so as to reflect the identity of the person entitled to receive insurance proceeds under the order of precedence set out in § 770 and to convey that information to Prudential. More narrowly, appellant contends that at least in this instance there was a duty on the government to inform Prudential that its records were contradictory and to convey full and accurate details of what they showed. Alternatively she urges that the program is in substance a government program and Prudential only an agent to make payment and perform actuarial services, and she claims that the government and Prudential are engaged in a joint effort to provide the insurance, with each the partner, agent, servant or employee of the other. She urges that any—or all—of these theories give her a cause of action for which the government has consented to be sued under 38 U.S.C. § 775:

> The district courts of the United States shall have original jurisdiction of any civil action or claim against the United States founded upon this subchapter.

Prudential's asserted defense is that its payment to Sharon Shannon, as the person shown as wife on the ["Interim"] Report of Casualty form, discharged all its obligations relating to the decedent.

Appellant moved for summary judgment based on the pleadings, depositions, and extensive interrogatories and requests for admission and responses thereto, and her affidavit that she was never divorced from Shannon. Prudential filed a cross-motion for summary judgment and a motion to dismiss. The government filed a motion to dismiss. Subsequently the appellant filed an

amended complaint. Thereafter the court granted the motions to dismiss.[2]

Neither the group policy nor the certificate of insurance required to be furnished the insured under § 772 is in the record.

We conclude that the district court erred in its premise that once the government has purchased group insurance for the serviceman it has discharged all obligations to him under the Act.

By the Act Congress "establish[ed] a program of group life insurance which shall be provided by private insurance companies for members of the armed services who are on active duty." H.R. Rep.No. 1003, 89th Cong., 1st Sess. (1965), 1965 U.S.Code Cong. & Admin. News, p. 3232. The Congressional purpose must be discerned in the light of the way in which group insurance in general and this group insurance program in particular operate.

Group insurance is concerned with the rights of a definite insured—the employer—and employees who are "in the position of third party beneficiaries,"[3] and the named beneficiaries of the employees, and at times assignees. 1 Appleman, Insurance Law & Practice, § 45 p. 66, § 41 p. 52. Normally the employer is neither an insurer nor a guarantor of payment. "This does not mean, however, that the employer may not have a liability imposed upon him either by reason of his actions or by reason of his failure to act, if the employee has been adversely affected thereby." Id. § 43 p. 57. He may, for example, be liable for failure to perform a contractual obligation to furnish group insurance, or to perform a contractual obligation to pay premiums, or for negligent omission of the insured's name from the list of those covered. Id. § 43, pp. 57–58.

The Congressional history evidences intent to make group insurance available to those within the Act not merely because they are employees of the government but because of their peculiar status as uniformed servicemen. (Those within the Act are, with minor exceptions, military servicemen.) There was urged upon Congress the limited availability to men in combat of commercial insurance at standard rates and without war exclusion clauses. Another factor was that many a young serviceman did not have a wife or children, and there was need for benefits to nondependent parents of servicemen, who had only limited benefits under the Survivors' Benefit Acts, and for brothers and sisters who were afforded no benefits. H.R.Rep. No. 1003, 89th Cong., 1st Sess. (1965), 1965 U.S.Code Cong. & Admin.News, pp. 3232, 3242. The Department of Defense, through its Acting General Counsel, expressed its support for the Act because of several objectives. At low cost to the serviceman and minimum cost to the government it would meet needs of young servicemen for benefits for nondependent survivors. It would be an added inducement to a service career and would contribute to morale of those in the Armed Forces by remedying gaps in the coverage of the Survivors' Benefit Acts. It would help alleviate the difficulty which servicemen sent to Viet Nam were encountering in obtaining private insurance. Id. p. 3244.

The government is deeply involved in the Servicemen's Group Life Insurance program, and it maintains significant control over the program in order to meet particular needs and requirements of the uniformed services. Right to the insurance is forfeited by conscientious objectors and persons convicted of described offenses mostly of a military nature, 38 U.S.C. § 773. Coverage is terminated for one absent without leave, 38 U.S.C. § 768. A serviceman who under

---

2. We reject summarily the argument that because the complaint was amended after the motions for summary judgment were filed the extensive fruits of discovery drop out of the record and may not be considered by us for any purpose.

3. Cf. Johnson v. Prudential Insurance Company of America, 182 Neb. 673, 156 N.W.2d 812 (1968).

§ 773 has forfeited his right to be covered may have it restored if he has been restored to active duty "under conditions which, in effect, result in a remission of sentence." 38 C.F.R. § 9.8(b) (3). Similarly, one who has had coverage terminated for AWOL may have it restored when he returns to active duty. 38 C.F.R. § 9.8(b) (2).

Each company issuing group policies to the Administrator must establish an administrative office at a place designated by the Administrator, 38 U.S.C. § 766(b), and the Administrator has exercised that power by establishing a single administrative office for all insurers. 38 C.F.R. § 9.1(f).

The Administrator establishes the initial amount to be paid by the serviceman for the insurance but may redetermine it based on experience. 38 U.S.C. § 769(a). He has exercised that power. 38 C.F.R. § 9.10(a). He determines the amount to be paid, from appropriations made for military pay, for the cost of the insurance traceable to extra hazard. The amounts deducted from servicemens' pay and those paid from appropriated funds are put in a revolving fund in the United States Treasury, and therefrom there are paid the premium payments, the extra hazard cost and "the administrative cost to the Veterans' Administration." 38 U.S.C. § 769(d); 38 C.F.R. § 9.14. The Administrator determines the amount to be withdrawn from the revolving fund and paid over to the general funds of the Veterans Administration. 38 U.S.C. § 769(d) (3); 38 C.F.R. § 914(b). The Secretary of the Treasury may invest in and sell and retire interest-bearing obligations of the United States for the account of the revolving fund. 38 U.S.C. § 769(d) (2).

If the required monthly amount is not deducted from the serviceman's pay or otherwise paid the indebtedness will be deducted from the proceeds of any Servicemen's Group Life Insurance which may become payable. 38 C.F.R. § 9.10 (b). In effect the government has a lien on policy proceeds to the extent of amounts which, for whatever cause, it has not deducted from the serviceman's pay.

If no claim has been made within two years after death, payment may be made to a claimant as may in the judgment of the Administrator be equitably entitled thereto. 38 U.S.C. § 770(c). If within four years no claim has been paid and none is pending, the proceeds of insurance escheat to the revolving fund in the United States Treasury. *Id.*

The Administrator has power to establish and to readjust the premium rates and to determine and redetermine the amounts which, for each policy, the insurer may receive for "expense and risk charges." When premiums exceed mortality plus the allowable expense and risk charges the excess is held by the insurer in a contingency reserve. If the contingency reserve attains an amount thought by the Administrator to be sufficient, any further excess goes to the revolving fund in the Treasury. When a policy is discontinued and all charges paid, any contingency reserve balance remaining goes to the revolving fund. 38 U.S.C. § 771(e).

Under 38 C.F.R. § 9.22 the Veterans Administration has broad power to make administrative decisions which conclusively determine the serviceman's coverage and the right to proceeds, including whether he is a "member" and "whether or not he is covered at any point in time under the policy." It conclusively determines the critical facts relating to loss or termination of coverage for military offenses. Under standards prescribed in the regulations it has power to conclusively determine existence, amount, waiver and loss of coverage, bearing in mind the peculiarities of uniformed service, such as possible lack of information, improper or misplaced applications, and lack of or improper counseling. *Id.*

In the usual group insurance program the insurer issues to each employee a certificate summarizing his benefits, bene-

ficiary, claims information and like data. In this program the Administrator issues the certificate instead. 38 U.S.C. § 772. Presumably a certificate does not reveal the name of the insurance company, since under 38 C.F.R. § 9.32 a serviceman or his beneficiary must be furnished the insurer's name on written request to the Veterans Administration.

This suit is not under the Federal Tort Claims Act. Jurisdiction over the United States depends on the consent to suit in § 775. The deep involvement of the government in this group insurance program, its control over the program, the payment to it of administrative costs, the escheat to it of unclaimed proceeds, and the other factors described above, particularly the manner in which the program is keyed to specialized needs and requirements of military service, cause the government to be much more than a routine employer making available to its employees the benefits of group coverage. Nevertheless, we conclude that the governmental involvement, even of this depth and scope, does not necessarily carry with it plenary consent to be sued in a non-tort action for damages at the behest of any claimant who has been denied group insurance proceeds. Section 775 is neither so broad as appellant would have it nor as narrow as the government would have it.

The Federal Employees Group Life Insurance Act, 5 U.S.C. § 8701 et seq., provides for another group insurance program. That program is an analogy of some usefulness, though the force of the analogy is limited because neither the purpose of the program nor the government involvement and control is consistent with that of the program for servicemen in uniform. The consent to sue section under that Act, 5 U.S.C. § 8715, is in all material respects the same as 38 U.S.C. § 775. Barnes v. United States, 113 U.S.App.D.C. 318, 307 F.2d 655 (1962) held § 8715 conferred consent to be sued "for any breach of legal duty owed by it under the Act." In *Barnes* the Court referred to this Congressional history:

> "[5 U.S.C. § 8715] would clarify the rights of claimants who may wish to make the United States a party to a court action involving a claim under the program. This section would extend the jurisdiction of United States District Courts above the $10,000 limitation now in effect." S.Rep. No. 1654, 83d Cong., 2d Sess. 4–5 (1954), U.S.Code Cong. & Admin.News 1954, p. 3052.

307 F.2d at 657. It concluded:

> Thus, irrespective of amount, the District Courts were granted jurisdiction over civil actions or claims "founded upon" the Act. The United States has consented to be sued, we conclude, to the extent that any such civil action or claim can be shown to involve some right created by this Act and a breach by the Government of some duty with respect thereto.

307 F.2d at 657–658. The Court held that the government had complied with an alleged duty of advising the insured upon retirement of his right to convert his group coverage, and that there was no duty on the government to act on behalf of the employee to effectuate the conversion which he was entitled to secure on his own behalf.[4] In Kimble v. United States, 120 U.S.App.D.C. 261, 345 F.2d 951 (1965) the same court held that the government had no duty to seek out and alert possible claimants.

The President's message relating to the proposed Employees Group Life program said:

> The functions normally performed by the employer in a group-insurance plan would, under this plan, be performed in the Government by the

---

4. Railsback v. United States, 181 F.Supp. 765 (D.Neb.1960) was a suit on a Federal Employees Group Life Insurance policy for accidental death benefits. The death benefits had been paid. The opinion reveals no assertion of breach of any duty by the government.

## 262

Civil Service Commission. *President's Message*, 1954 U.S.Code Cong. & Admin.News, p. 3056.

The description of the government's role as "procuring agent" under that Act, Brinson v. Brinson, 334 F.2d 155, 10 A.L.R.3d 795 (4th Cir. 1964), was in the context of a choice of law governing terms of the insurance policy and does not preclude the possibility of the government having duties to the employee.

Johnson v. Prudential Insurance Company of America, 182 Neb. 673, 156 N. W.2d 812 (1968) held that Servicemen's Group Life Insurance is a contract between the government and the insurer for the benefit of the insured servicemen. Under the Servicemen's Group Life Act a scope of duty beyond that of procuring the coverage is indicated by the regulation, 38 C.F.R. § 9.32:

Actions at law or in equity to recover on the policy, in which there is not alleged any breach of any obligation undertaken by the United States, should be brought against the insurer.

The government's duty in this case, if there be any, springs from its status as the keeper of records on its farflung and transitory uniformed servicemen, and in that capacity its handling of designations of and changes of beneficiaries and its participation in handling of claims. Insurance proceeds are to be paid "upon the establishment of a valid claim therefor," 38 U.S.C. § 770(a), and "in accordance with the group policy purchased by the Veterans Administration," 38 C.F.R. § 9.32. Any designation of beneficiary or change of beneficiary for a serviceman on active duty will take effect only if it is in writing, signed by the insured, "and received, prior to the death of the member, by his uni-

formed service." 38 C.F.R. § 9.16(c).[5] A change or cancellation of beneficiary may be in the form of a last will and testament or other document, but for one on active duty it is effective only if received by the uniformed service. 38 C.F.R. § 916(e).

■ The government discharged its obligation under the statute and regulations of receiving a designation of beneficiary, which was "the order of precedence set forth in the law." That designation remained unchanged. By its "Interim" Report of Casualty the government communicated to Prudential the beneficiary designation. But in addition it told the insurer what identified person occupied the top rung on the ladder of precedence, i. e., who was the wife. Neither the face of the statute nor the regulations required the government to do this. If the government did so in this instance only accidentally or negligently, or did so under a contract or *modus operandi* by which it supplies data identifying those who occupy the order of precedence to insurers who are not to rely thereon but only to use it at their peril, then we perceive no duty on the government. However, an undertaking by the government to supply data identifying those who occupy the order of precedence on which identity the insurer is to rely, is wholly consistent with the function of an employer under a group insurance program and more particularly of the Armed Services as employer, as custodian of information vital to the serviceman and his family, and as the agency of our government peculiarly desirous of prompt payment of death benefits.[6] If there is such an undertaking the government may be sued therefor under § 775. On the record before us we do not know what

---

5. Coverage continues for one leaving active duty for 120 days. It is only those who have left active duty who file designations of, or changes of, beneficiary with the office of the insurer. 38 C.F.R. § 9.16(c).

6. The Record of Emergency Data form signed by Shannon in January, 1966,

showed such information as his religion, social security number, names and addresses of spouse, parents and children and which of them should not be notified if he were a casualty, beneficiaries of unpaid pay and allowances and death gratuity pay, location of will, and insurance data.

the government has undertaken to do, either by contract or by established procedures reasonably related to the Act and to its powers and duties under the Act.[7] These are matters for determination by the District Court on a full record.

In Stribling v. United States, 293 F.Supp. 1293 (E.D.Ark.1968) suit was against the United States and Prudential. The wife of a serviceman killed in Viet Nam was paid by Prudential under an "order of precedence set forth in the law" designation. His mother filed suit against the United States and Prudential for the policy proceeds. Also she claimed negligence by the United States. She put in evidence a signed carbon of an Election form, DA 3054, designating her as beneficiary, but it was stipulated that the form had not been received by the Army. The District Court held it had jurisdiction under § 775, dismissed as to the United States, and found on the merits in favor of Prudential.[8]

■ If the District Court concludes that appellant may not prevail against the United States it still has discretionary pendent jurisdiction over the claim against Prudential. Both claims derive from a "common nucleus of operative fact." United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). "[Co]nsiderations of judicial economy, convenience and fairness to litigants," *Id.*, 383 U.S. at 726, 86 S.Ct. at 1139, 16 L.Ed.2d at 228, authorize exercise of jurisdiction in this case. To this point appellant has been whipsawed between the position of the United States (suable only in federal court) that it has no duty except to buy insurance, and the position of Prudential (which insists it is suable only in state court) that it has been discharged of its duty as insurer by paying in accordance with information furnished by the government. Both defendants are carrying out a program provided by federal law and exemplifying our strong national policy of concern for uniformed servicemen and the welfare of their families. And the program—group insurance—is one in which at best the relationships between the parties is the most involved and the most confusing in the entire field of personal insurance, 1 Appleman, *supra*, § 46, pp. 66–67, and in this instance has pervasive governmental participation and control. The appellant is not required to bounce from court to court to try to find which shell the pea is under.

Reversed and remanded for proceedings not inconsistent with this opinion.

7. As part of the limited knowledge available to us we include Army Regulation No. 610–40, Record of Emergency Data (Dec. 16, 1964), providing that the soldier is to list on his Record of Emergency Data his commercial and government-sponsored insurance, that the Army furnishes a copy of the Report of Casualty to all listed insurance agencies "to facilitate settlement of personal affairs," and that: "The sole purpose of this item is to enable the Department of the Army to assist survivors by promptly furnishing Reports of Casualty to insurance companies, thus enabling a rapid response by the companies to insurance claims."

8. *See also*, Grove v. United States, 170 F.Supp. 176 (E.D.Va.1959) in which suit was brought against the United States on a Federal Employees Group Life policy, and the insurer was added as a party defendant. No breach of duty was found as to the United States, it was dismissed as a defendant, and the case proceeded to decision on the merits of the claim against the insurance company.