**Hannelore E. WEYMANN, Plaintiff,**

v.

**Mary C. WILSON and The United States of America, Defendants.**

**No. 69–464 Civ. T.**

United States District Court,
M. D. Florida,
Tampa Division.

Dec. 21, 1970.

Margaret Deaton, Tampa, Fla., for plaintiff.

Albert M. Salem, Jr., Tampa, Fla., for defendant Mary C. Wilson.

Hugh N. Smith, Asst. U. S. Atty., Tampa, Fla., for defendant United States.

## ORDER

KRENTZMAN, District Judge.

This came before the Court upon motions for summary judgment filed by all the parties. A hearing on plaintiff's motion was held October 5, 1970.

Rule 56(c), F.R.Civ.P., provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

### I

The material facts in this action are undisputed. Plaintiff Hannelore E. Weymann was married to Herbert D. Wilson on May 9, 1962. In September, 1965, the Servicemen's Group Life Insurance program became available to men in uniform.[1] On October 14, 1965, Herbert D. Wilson, then an Air Force enlisted man elected to participate in the program and designated his mother and father as beneficiaries of the $10,000 policy.

On July 19, 1966, plaintiff Weymann and Herbert D. Wilson were divorced by the Hillsborough County, Florida, Circuit Court. Incorporated into the decree was a separation agreement between plaintiff and Herbert D. Wilson dated July 12, 1966. The agreement provided in part:

"The party of the first part [Herbert D. Wilson] shall keep in full force and effect a certain Government Life Insurance policy in the total amount of $10,000.00, with the party of the second part [plaintiff] being made irrevocable beneficiary and the three minor children of the parties as contingent beneficiaries."

Plaintiff's attorney furnished a copy of the divorce decree and the agreement to the Veterans Administration Center, Insurance Records Division, Philadelphia, Pennsylvania, on July 21, 1966. A cover letter requested that the decree and agreement be made part of the insurance file of Herbert D. Wilson. The letter did not state the policy number, the type of policy involved, or the serial number of Herbert D. Wilson. Following a diligent search, the defendant United States of America has been unable to locate any record of the original letter.

Herbert D. Wilson married defendant Mary C. Wilson in Tampa, Florida, on December 8, 1966. On May 19, 1967, Herbert D. Wilson executed a change of beneficiary form for the Air Force, by which he cancelled his previous designation of beneficiary. Under the provisions of 38 U.S.C. § 770(a), if no beneficiary has been designated, the proceeds of Servicemen's Group Life Insurance policies go to the widow, if there is one. Therefore, when Herbert D. Wilson cancelled all previous designations of beneficiary he was in effect making defendant Wilson his beneficiary.[2]

According to the affidavit of defendant Wilson, filed October 19, 1970, the circumstances involved in the change of beneficiary were as follows:

"In May 1967 * * * my husband Herbert D. Wilson came home and

---

1. The provisions of this program are discussed fully below.

2. The form on which Herbert D. Wilson made the change of beneficiary, VA Form 29–8286, summarized the provisions of 38 U.S.C. § 770(a). For the circumstances under which Herbert D. Wilson made this change of beneficiary, see the affidavit of defendant Wilson, quoted below.

showed your Affiant a form which he took from his pocket and unfolded. He said he had completed it in order to change the beneficiary of some insurance from his parents' name to mine. He handed me the form, explained the words 'cancel any prior designation', and told me to put it with our valuable papers. I read the form front and back and understood that the effect of the designation was to make me the beneficiary of $10,000.00 worth of Servicemen's Group Life Insurance, and he assured me that this was the case. * * * On the date in May 1967 referred to hereinabove, was the only time before or after that day that Herbert D. Wilson and your Affiant ever discussed any insurance benefits. * * * He did not mention the Plaintiff or their children, and I never knew whether or not he carried any insurance for the benefit of any of them. We simply never discussed that subject."

Herbert D. Wilson died suddenly of anoxia following an automobile accident June 11, 1969, at Key West, Florida. Defendant Wilson, who had never seen the Servicemen's Group Life Insurance Policy or any certificate of coverage, was aided in making her claim by an Air Force officer. She received the $10,000 proceeds of the policy on August 3, 1969.

Following the death of Herbert D. Wilson on June 11, 1969, plaintiff's attorney wrote a number of letters in connection therewith. On June 30, 1969, a letter was sent to defendant Wilson concerning matters of Herbert D. Wilson's estate. No mention of any insurance was made. Also on June 30, 1969, a letter was sent to defendant Wilson's attorney inquiring into the assets of the estate. In his reply dated July 1, 1969, the attorney wrote:

"There is one other item of property in this estate consisting of a National Service Life Insurance policy on the life of the decedent in the amount of $10,000.00, which shows Mrs. Wilson as the beneficiary of the policy. I pointed out to Mrs. Wilson that whether or not the proceeds of the policy belong to her or to Mrs. Wilson's [sic] ex-wife, your client, will, of course, depend on a decision of the Court based upon the agreement between Mr. Wilson and his ex-wife and the Final Decree of Divorce which incorporated the terms of that agreement."

On July 25, 1969, plaintiff's attorney wrote the defendant Wilson and asked for surrender of the policy, which, on the basis of the July 1 letter quoted above, was referred to as a National Service Life Insurance policy.[3] On August 28, 1969, a letter was sent to the defendant Wilson stating that if the policy were not returned within ten days, a legal action would be forthcoming.[4] At this time, the proceeds of the policy had already been paid.

On July 19, 1969, plaintiff's attorney wrote to the Veterans Administration. The letter stated:

"The purpose of this letter is to put your office on notice of a claim to the proceeds of a certain National Service Life Insurance Policy on the life of Herbert D. Wilson on behalf of his former wife, Hannelore Wilson (now Weymann). This claim is based upon an agreement entered into between my client, Hannelore E. Wilson (Weymann) and Herbert Dennis Wilson on July 12, 1966, as part of divorce proceedings then pending between them. This Agreement was made a part of the Final Decree of Divorce between these two parties, entered by Judge James S. Moody of the Circuit Court * * *. I enclose copies of this divorce decree and agreement.

3. For the provisions of the National Service Life Insurance Act, see 38 U.S.C. §§ 701–724. Under this Act, unlike the Servicemen's Group Life Insurance program, the government is the insurer.

4. In this letter the disputed insurance policy was referred to as a "United States National Service Life Insurance Policy."

My client does not have the life insurance policy, nor does she have any record of its number, and we are assuming that the policy was in the possession of Herbert Dennis Wilson, and may now be in the possession of his second wife, who is now his widow, Mrs. Mary C. Wilson."

The Veterans Administration replied July 29, 1969, stating that there was no record of insurance having been issued to Herbert D. Wilson under either the National Service Life Insurance or United States Government Life Insurance programs.[5] When plaintiff's attorney wrote again, the Veterans Administration replied on October 9, 1969:

"A complete review of our files indicates that the veteran had no National Service Life Insurance in force on the date of his death. There is also no record of the veteran having ever applied for National Service Life Insurance."

## II

This action was commenced on November 7, 1969. Because of plaintiff's incorrect belief as to the type of policy involved, jurisdiction was founded upon 38 U.S.C. § 784, which grants the District Court jurisdiction of claims relating to National Service Life Insurance and United States Government Life Insurance. Actually, jurisdiction is pursuant to 38 U.S.C. § 775, which provides:

"The district courts of the United States shall have original jurisdiction of any civil action or claim against the United States founded upon this subchapter [the subchapter relating to Servicemen's Group Life Insurance, 38 U.S.C. §§ 765–776]."

The complaint is in four counts. Count 1 alleges that (a) defendant Wilson conspired with Herbert D. Wilson to cause herself to be named as beneficiary, and (b) the United States of America, being on notice of the decree of the Hillsborough County Circuit Court, did disregard such notice and pay over the proceeds to defendant Wilson. Count 2 alleges that both defendants converted the proceeds of the policy, which rightfully belonged to plaintiff, to the use of defendant Wilson.

Count 3 alleges that defendant Wilson received the proceeds of the policy, although they belonged to plaintiff, and asks that the Court impose a constructive trust thereon for the benefit of plaintiff. Count 4 alleges that the United States has failed to make payment to plaintiff of the proceeds of the policy.

In her Reply Memorandum, filed October 26, 1970, plaintiff asks that defendant Wilson's written motion for summary judgment, filed October 19, 1970, be stricken. The motion will be denied.

Although all three parties have moved for summary judgment, the Court will deal principally with plaintiff's motion. For the reasons which follow, plaintiff's motion will be denied, and defendants' motions will be granted.

## III

The Servicemen's Group Life Insurance program was authorized by Public Law 89–214, passed September 29, 1965. The Servicemen's Group Life Insurance Act comprises 38 U.S.C. §§ 765–776. The pertinent provisions of the Act are as follows. The Veterans Administrator is authorized to purchase from life insurance companies a policy or policies of group life insurance. 38 U.S.C. § 766(a). The life insurance company or companies issuing the policies are to establish an administrative office at a place designated by the Administrator. 38 U.S.C. § 766(b).

The policies may not exceed $10,000 and are to insure the lives of service men on active duty. 38 U.S.C. § 767(a). The serviceman insured is to pay the cost of premiums on the policy; the Administrator contributes the costs traceable to the hazards of active duty. 38 U.S.C. § 768. Upon the death of the insured

---

5. For the provisions of the United States Government Life Insurance Act, see 38 U.S.C. §§ 740–760. Under this program also, the government is the insurer.

serviceman, proceeds of the policy are paid in this order: First, to the beneficiary *designated by a writing received in the uniformed services*; Second, if there is no designated beneficiary, to the widow of the deceased; Third, if there are none of the above, to other specified persons. 38 U.S.C. § 770. 38 U.S.C. § 775 grants to the district courts jurisdiction of claims against the United States founded upon the Act.

38 U.S.C. § 210(c) (1) provides:

"The Administrator has authority to make all rules and regulations which are necessary or appropriate to carry out the laws administered by the Veterans Administration and are consistent therewith, including regulations with respect to the nature and extent of proofs and evidence and the method of taking and furnishing them in order to establish the right to benefits under such laws, the forms of application by claimants under such laws, the methods of making investigations and medical examinations, and the manner and form of adjudications and awards."

Administrative regulations dealing with Servicemen's Group Life Insurance may be found in 38 C.F.R. §§ 9.1–9.34. The administrative office of the insurer pursuant to 38 U.S.C. § 766(a) is designated the Office of Servicemen's Group Life Insurance (hereinafter OSGLI), located at 212 Washington Street, Newark, New Jersey. 38 C.F.R. § 9.1(f). For each month a serviceman is insured under the Act, his uniformed service deducts from his pay and remits to the Veterans Administration the costs of the monthly premium. 38 C.F.R. § 910. Payment is also made for the cost of insurance which is traceable to the extra hazard of active duty in the uniformed services. 38 C.F.R. § 9.12.

Beneficiary designations remain in effect until properly changed by the insured serviceman. 38 C.F.R. § 9.16(b). Designations and changes of beneficiaries are governed by these rules:

"Any designation or change of beneficiary will take effect only if it is in writing, signed by the insured, and received, prior to the death of the member, by his uniformed service * * *." [38 C.F.R. § 9.16(c).]

"No change or cancellation of beneficiary in a last will or testament, or in any other document not received by the appropriate uniformed service while the member is on active duty * * * will have any force or effect." [38 C.F.R. § 9.16(e).]

The statutory order of precedence is followed where the insured dies without designating a specific beneficiary. 38 C.F.R. § 9.16(h). Benefits will be paid upon the filing of a valid claim with OSGLI. 38 C.F.R. § 9.18(a). The claim must be accompanied by proof of death and the claimant's right to payment. *Id.*

IV

The Court deals first with plaintiff's motion insofar as it seeks summary judgment against the United States. Count 4 demands judgment against the United States because it has failed to make payment of the proceeds of the policy to plaintiff, despite demand therefor. Such a claim is on its face self-refuting. Under the provisions of the Servicemen's Group Life Insurance Act and the regulations thereunder, the United States through the Veterans Administrator purchases group life insurance policies from commercial insurance companies for the benefit of servicemen on active duty. The United States is not the insurer; it does not pay proceeds of the policies. The private insurance companies, through their office (OSGLI), pay the benefits upon the filing of a proper claim.

The United States, not being obligated to pay Servicemen's Group Life Insurance benefits to anyone, is therefore entitled to summary judgment as to Count 4; plaintiff's motion must be denied.

Count 1 of the complaint demands judgment against the United States because it is alleged that the United States, being on notice of the divorce decree

and separation agreement, did disregard such notice and pay over the proceeds of the policy, rightfully plaintiff's to defendant Wilson.

In Shannon v. United States, 417 F.2d 256 (5 Cir. 1969), the Fifth Circuit discussed the extent to which the United States is liable to actions brought under 38 U.S.C. § 775, which grants jurisdiction to the District Courts of civil claims against the United States founded upon the Servicemen's Group Life Insurance Act. The Court said:

"We conclude that the district court erred in its premise that once the government has purchased group insurance for the serviceman it has discharged all obligation to him under the Act.

\* \* \* \* \* \*

This suit is not under the Federal Tort Claims Act. Jurisdiction over the United States depends on the consent to suit in § 775. The deep involvement of the government in this group insurance program, its control over the program, the payment to it of administrative costs, the escheat to it of unclaimed proceeds, and the other factors described above, particularly the manner in which the program is keyed to specialized needs and requirements of military service, cause the government to be much more than a routine employer making available to its employees the benefits of group coverage. Nevertheless, we conclude that the governmental involvement, even of this depth and scope, does not necessarily carry with it plenary consent to be sued in a non-tort action for damages at the behest of any claimant who has been denied group insurance proceeds. Section 775 is neither so broad as appellant would have it nor as narrow as the government would have it." Shannon v. United States, *supra* at 259, 261.

In *Shannon* the deceased serviceman had elected a beneficiary provision whereby payment of proceeds would be made under the statutory order of precedence. This meant that upon his death, which occurred in Viet Nam, June 11, 1966, benefits were to be paid to his widow. The problem arose because Shannon, having entered into a second and apparently bigamous marriage, had two wives at his death. The government communicated to OSGLI not only what was required, i. e., the designation of beneficiary, but also the *name* of the correct spouse. It was this act which opened the government to liability.

"The government discharged its obligation under the statute and regulations of receiving a designation of beneficiary, which was 'the order of precedence set forth in the law.' That designation remained unchanged. By its 'Interim' Report of Casualty the government communicated to Prudential [the insurer under the Servicemen's Group Life Insurance Act] the beneficiary designation. But in addition it told the insurer what identified person occupied the top rung on the ladder of precedence, i. e., who was the wife. Neither the face of the statute nor the regulations required the government to do this. If the government did so in this instance only accidentally or negligently, or did so under a contract or *modus operandi* by which it supplies data identifying those who occupy the order of precedence to insurers who are not to rely thereon but only to use it at their peril, then we perceive no duty on the government. However, an undertaking by the government to supply data identifying those who occupy the order of precedence on which identity the insurer is to rely, is wholly consistent with the function of an employer under a group insurance program and more particularly of the Armed Services as an employer, as custodian of information vital to the serviceman and his family, and as the agency of our government peculiarly desirous of prompt payment of death benefits. If there is such an undertaking the government may be sued therefor under § 775." *Id.* at 262.

In support of Count 1, plaintiff contends that by her writings to the Veterans Administration she (a) established herself as the properly designated and irrevocable beneficiary of Herbert D. Wilson's Servicemen's Group Life Insurance policy and (b) made a proper claim for the proceeds of the policy.

The Court notes initially that, as stated above, the United States does *not* pay the proceeds of Servicemen's Group Life Insurance policies. Therefore, insofar as Count 1 seeks judgment because the government *paid* benefits to defendant Wilson despite notice of plaintiff's claim, plaintiff cannot recover from the United States.

■ The undisputed facts show that plaintiff was never validly designated a beneficiary of Herbert D. Wilson's insurance policy. The statutes require that all designations of beneficiary be received in writing by the uniformed service. 38 U.S.C. § 770(a). The regulations require that all designations or changes of beneficiary, no matter what their documentary form, be received by the appropriate uniformed service. 38 C.F.R. §§ 9.16(c), (e). Plaintiff admits that she addressed all communications to the Veterans Administration; and she has stated specifically that she did not address any correspondence to the Air Force. Plaintiff does not argue that the Air Force received her letters. Her argument is that the Veterans Administration amounted to receipt by the Air Force. Alternatively, she maintains that the Veterans Administration failed to transmit the letters to the Air Force or to inform the latter of their nature and existence.

■■ This argument is unacceptable. Plaintiff sent her communications and documents to the wrong party. The Act and regulations thereunder clearly require designations of beneficiary to be filed with the uniformed service of the serviceman. Plaintiff sent her designation of beneficiary to the Veterans Administration. The Veterans Administration is not the Air Force. In this age of big government it is unrealistic to as-sert that receipt of a document by one branch thereof is equivalent to receipt by another distinct branch. And the Veterans Administration was under no duty to forward to another branch of government documents incorrectly sent it by plaintiff.

Furthermore, the plaintiff failed to file a valid claim for the proceeds of the policy. According to her own admission, plaintiff sent her letter stating her claim to the Veterans Administration; she did not send a claim to OSGLI. Under the regulations, claims must be filed with OSGLI; unless this is done, no payments will be made. 38 C.F.R. § 9.18(a).

■ Finally, the plaintiff cannot bring this case within the ambit of the *Shannon* case by alleging that the United States exceeded its duty under the statutes and regulations. Under the Shannon rule, there can be no breach of duty unless the United States acts or fails to act in accordance with the applicable statutes and regulations thereunder. The appropriate regulations here require that designations or changes of beneficiary must be in writing and received by the appropriate uniformed service. The United States is not deemed to have notice of a change of beneficiary unless such notice is directed to and received by the uniformed service of the insured. Shannon v. United States, *supra* at 262.

■ In the instant case the United States fully complied with its duties under the Servicemen's Group Life Insurance Act and regulations pursuant thereto. The last designation of beneficiary in writing received by the Air Force was the one executed by Herbert D. Wilson on May 19, 1967. When the claim for benefits was filed with OSGLI by defendant Wilson, the Air Force correctly informed the insurer that according to its records Herbert D. Wilson had cancelled all designations of beneficiary, which meant under the statutory scheme that his widow Mary C. Wilson was his beneficiary. Even if the uniformed service had gone beyond its duty and specified the widow as defendant Wil-

son, there would still have been no breach of duty. No one has questioned the fact that defendant Wilson is Herbert D. Wilson's widow. The government did not err when it determined that Herbert D. Wilson had elected to follow the statutory order of precedence by cancelling all prior designations of beneficiary. Nor did it err when it then determined that defendant Wilson was his widow. Since the United States adhered to its statutory duty and in nowise deviated therefrom, the *Shannon* rule does not apply to this case.

Count 2 alleges that the United States converted the proceeds of Herbert D. Wilson's Servicemen's Group Life Insurance policy to the use of defendant. In view of the Court's holding that the United States was acting in accordance with law when it caused the insurer to pay the proceeds to defendant Wilson, this count must fail.

Count 4 alleges that the United States failed to make payment to plaintiff despite demand therefor. The Court reiterates: the government does not pay Servicemen's Group Life Insurance benefits. This count must also fail.

### V

■ The Court next deals with plaintiff's motion for summary judgment against defendant Wilson. In Count 1, plaintiff asks judgment against defendant Wilson on the ground that defendant Wilson conspired with Herbert D. Wilson to cause herself to be named as beneficiary of the Servicemen's Group Life Insurance Policy. In her affidavit filed October 19, 1970, quoted above, defendant Wilson through a recitation of specific facts denies this. Since the affidavit has not been refuted or denied by plaintiff it must be accepted as true. The undisputed facts rebut any conspiracy.

■ Count 2 alleges conversion. The facts speak otherwise. Defendant Wilson received the proceeds because she was the legal recipient thereof. She knew nothing of the agreement at the time she applied for benefits. Although several letters from plaintiff's attorney reached her prior to and shortly after her receipt of the proceeds, they referred to a certain National Service Life Insurance policy, and at no time until after she had received the proceeds was she aware of plaintiff's claim to the Servicemen's Group Life Insurance policy.

"After my husband's death and after an Air Force officer in Key West, Florida, prepared a claim for me seeking payment of the Servicemen's Group Life Insurance, your Affiant received a letter from Attorney Margaret Deaton, referring to a National Service Life Insurance policy which Affiant did not have and had never had or seen. I simply did not understand what the letter was referring to, since I did not have any insurance policy at all. This letter was dated July 25, 1969, and was quite confusing in view of the letter received from Margaret Deaton dated June 30, 1969, which made no reference to any insurance policy whatsoever. * * * I assumed that there was other insurance and that there was a policy somewhere, but, after extensive searching, I was unable to locate one. Then about a month later, I received notice of a postage due certified letter from Margaret Deaton, dated August 28, 1970 [sic. 1969]. I paid the postage and upon reading the letter, learned that my attorney in Key West had told attorney Deaton that I had an insurance policy in my possession. This was not true and was apparently a mistake on the part of Mr. Sauer. * * * Your Affiant never knew of any agreement between Herbert D. Wilson and the Plaintiff, until receiving the letter of July 25, 1969, from Margaret Deaton, and then only knew that it related to some insurance policy which I have never seen or heard about from Herbert D. Wilson." Affidavit of defendant Mary C. Wilson, filed October 19, 1970, pp. 2–3.

Defendant Wilson has not converted the proceeds of the policy. She received the proceeds because under federal law she was the designated beneficiary. Plaintiff's claim to the benefits arises out of an agreement between plaintiff and Herbert D. Wilson—an agreement to which defendant Wilson was not a party and of which she was not even aware. Because the agreement was never submitted to the proper authority, defendant Wilson received the proceeds of the policy. Any claim plaintiff has to the policy is based upon an alleged breach of contract by Herbert D. Wilson. However, if Herbert D. Wilson defaulted on a promise, this does not make defendant Wilson a converter. She received the money legally. She holds the money legally. Herbert D. Wilson's failure to properly designate plaintiff as beneficiary does not make plaintiff beneficiary of the policy, nor does it make defendant Wilson guilty of conversion. Rather, if plaintiff's allegations are correct, she has a cause of action against Herbert D. Wilson's estate for breach of the agreement. See Lindeburg v. Lindeburg, 162 So.2d 1 (3 D.C.A.Fla.1964).

In Count 3 plaintiff asks that a constructive trust in an amount of $10,000 be imposed on the proceeds of the policy for her benefit. A constructive trust is a creature of equity. See 33 Fla.Jur. Trusts §§ 61–71. The circumstances which warrant the imposition of a constructive trust are not present here. Therefore, this Count cannot prevail.

On the basis of the foregoing, it is

Ordered and adjudged:

1. Plaintiff's motion for summary judgment is denied.

2. Plaintiff's motion to strike defendant Wilson's Cross Motion for Summary Judgment is denied.

3. Defendant United States of America's motion for summary judgment is granted.

4. Defendant Mary C. Wilson's motion for summary judgment is granted.