**Albert H. GATES, Plaintiff,**

v.

**UNITED STATES of America and Prudential Insurance Company of America, Defendants.**

**Civ. A. No. SA–71–CA–344.**

United States District Court,
W. D. Texas,
San Antonio Division.
Nov. 28, 1972.

---

Phillip D. Hardberger, Donald J. Walheim, San Antonio, Tex., for plaintiff.

William S. Sessions, U. S. Atty., by C. J. Calnan, Asst. U. S. Atty., San Antonio, Tex., for United States of America.

James D. Baskin, Jr., San Antonio, Tex., for Prudential Ins. Co. of America.

## MEMORANDUM AND ORDER

JOHN H. WOOD, Jr., District Judge.

On the 12th day of October, 1972, came on to be heard this action in which Plaintiff sought to recover all or part of the proceeds of life insurance coverage under Servicemen's Group Life Insurance, 38 U.S.C., Section 765 et seq., upon the life of his son, Billy Lee Gates, an Air National Guardsman. Trial was to the Court, and the Court having heard the testimony, reviewed the exhibits introduced into evidence, and having considered the briefs and oral arguments of counsel, the following facts are judicially determined:

1. On or about July 18, 1970, Billy Lee Gates was killed in an automobile accident in San Antonio, Texas.

2. At the time of his death, Billy Lee Gates was a member of the 149th Tactical Fighter Group, Texas Air National Guard, which is permanently stationed at Kelly Air Force Base, Texas.

3. At the time of his death, Billy Lee Gates was on annual active duty for training.

4. Airman Gates at the time of his death was insured under Servicemen's Group Life Insurance for the amount of $15,000 under policy G32000.

5. The policy holder is the Administrator of Veterans' Affairs of the Defendant United States of America and the insurer is the Defendant Prudential Insurance Company of America. (Defendants' Exhibit B.)

6. Airman Gates designated no beneficiary under said insurance policy. (Defendants' Exhibit A.)

7. Airman Gates was not survived by a wife or by children.

8. The Plaintiff, Albert H. Gates, is the natural father of the deceased and Donna M. Gates is the natural mother of the deceased. The deceased gave the addresses of his parents on Air Force Form 246, Record of Emergency Data (Defendants' Exhibit A) as follows: Albert H. Gates, Spring Lake Mobile Home Estate, Kingston, New York 12401, and Donna M. Gates, 2713 S. W. W. White Road, San Antonio, Texas 78222.

9. The 149th Tactical Fighter Group at Kelly Air Force Base was assigned the responsibility of casualty assistance by the Air Force Military Personnel Center, Air Force Casualty Division, Randolph Air Force Base, Texas, since the deceased was an Air National Guardsman. Specifically, Captain Earl C. Heath, Chief, Consolidated Base Personnel Office of the 149th Tactical Fighter Group, was assigned to casualty assistance.

10. Members of the deceased's military unit rendered casualty assistance to the mother, Donna M. Gates. (Defendants' Exhibit 8-A.)

11. Deceased's military unit attempted to notify Plaintiff at his Kingston, New York, address by commercial telegram dated July 19, 1970, and the Base Message Center at Kelly Air Force Base advised on July 20, 1970, that the telegram was undeliverable because Plaintiff had moved from such address, leaving no forwarding address.

12. Defendant Prudential was notified of decedent's death by receipt of Department of Defense Form DD–1300, dated July 21, 1970 (Defendants' Exhibit C) from Randolph Air Force Base. It also received amended reports on Department of Defense Forms DD–1300 dated August 14, 1970, and September 4, 1970. (Defendants' Exhibits D and E, respectively.)

13. By letters dated September 22, 1970, Veterans Administration claim Forms VA–29–8283 for use in making claim for insurance benefits under Servicemen's Group Life Insurance were sent by Defendant Prudential to both Albert H. Gates and Donna M. Gates at the addresses provided by the Air Force from the deceased's Air Force Form 246, Record of Emergency Data. The letter to Albert H. Gates was returned with the notation "Moved, Address Unknown." (Defendants' Exhibit I.)

14. The deceased's mother, Mrs. Donna M. Gates, made claim for the death benefits under the proceeds of insurance by VA Form 29–8283, submitted on September 29, 1970. (Defendants' Exhibit J.)

15. By letter dated October 13, 1970, (Defendants' Exhibit L) Defendant Prudential paid fifty percent (50%) of the death benefits under the Servicemen's Group Life Insurance Policy in the amount of $7,500 to Donna M. Gates.

16. A second letter dated October 13, 1970, (Defendants' Exhibit K) was sent by Prudential to Albert H. Gates at the Kingston, New York, address which was also returned with the notation, "Moved, Address Unknown."

17. Defendant Prudential, acting through Winfred S. Gideon, 3rd, wrote to Donna M. Gates requesting a correct address of Albert H. Gates on December 15, 1970, January 22, 1971, March 8, 1971, May 3, 1971, and June 18, 1971. (Defendants' Exhibits, respectively, M, N, O, P and Q.) Donna M. Gates did not reply to any of the above except that she returned to Prudential the original of the letter dated June 18, 1971, enclosing therein page 1 of a letter dated November 9, 1970, on Department of the Air Force stationery (Defendants' Exhibit R) which advised her that if the father of the decedent did not make a claim within one year of decedent's death, the law would presume that the father predeceased the son.

18. Captain Louis W. Bell was Maintenance Officer for the 149th Tactical

Fighter Group and as such was deceased's Officer-In-Charge.

19. In about October, 1970, Plaintiff did some work on Captain Bell's automobile and on two occasions asked him for assistance in connection with his son's death. (Defendants' Exhibits Y–1 and Y–2.)

20. Captain Bell advised the Plaintiff to talk with Captain Earl C. Heath, Personnel Officer of the 149th Tactical Fighter Group.

21. At least as early as May, 1971, Plaintiff engaged the services of one Tom Lee, an attorney in San Antonio, to ascertain whether he had any death benefits or insurance proceeds arising from his son's death.

22. Attorney Lee called Captain Heath to inquire about any claim that the Plaintiff might have. Captain Heath referred Lee to Captain Reese L. Harrison, Jr., Judge Advocate of the 149th Tactical Fighter Group. Further, this was confirmed by letter dated May 18, 1971, (Plaintiff's Exhibit 3) from Captain Heath to Lee (with a carbon copy to Captain Harrison) also stating how to apply for insurance proceeds: "Claims filed with: Office of Servicemen's Group Life Insurance, 212 Washington Street, Newark, New Jersey 07120." Attorney Tom Lee received this letter and was aware of its contents.

23. Attorney Lee called Captain Harrison in early July, 1971, and Captain Harrison told Attorney Lee how to make claim for one-half of the insurance proceeds and warned him that he should file Plaintiff's claim promptly as the anniversary date of decedent's death was approaching.

24. Neither Plaintiff nor his then attorney, Tom Lee, ever made a claim for the proceeds of the insurance policy.

25. On July 28, 1971 (Defendants' Exhibit S) Prudential, acting once more through Mr. Gideon, wrote to Mrs. Gates and she replied thereto in writing on the bottom of the original of the said letter to the effect that "I definitely do not know anything about my son's father."

Said letter was received by Prudential on August 2, 1971. On August 12, 1971, Gideon wrote to F. J. Petraitis, Director, Insurance Service, Veterans' Administration, asking assistance in locating the Plaintiff. (Defendants' Exhibit T.)

26. On August 10, 1971, Prudential received a copy of a Veterans' Administration telegram advising that the only address the Veterans' Administration had was the Kingston, New York, address previously furnished by decedent. (Defendants' Exhibit U.)

27. On August 26, 1971, Plaintiff's attorney herein, Phillip D. Hardberger, wrote to the Air Force at Kelly Air Force Base stating that he was making claim for insurance proceeds on decedent's life. This was misrouted in the Air Force and was never received in the Office of Servicemen's Group Life Insurance. (Defendants' Exhibits X–1, X–2 and X–3.)

28. On August 30, 1971, Gideon, as Manager of the Office of Servicemen's Group Life Insurance, made the administrative determination that Albert H. Gates had predeceased the insured for the purpose of settlement of Servicemen's Group Life Insurance claim. (Defendants' Exhibit V.)

29. By letter dated September 1, 1971, Defendant Prudential forwarded its check in the amount of $7,500 to Donna M. Gates, representing payment of the remaining one-half of the insurance proceeds. (Defendants' Exhibit W.)

30. The Defendant United States of America did not know Plaintiff's whereabouts at any time prior to the payment of all insurance proceeds to Donna M. Gates.

31. The Defendant, The Prudential Insurance Company of America, did not know Plaintiff's whereabouts until after it had paid all insurance proceeds to Donna M. Gates.

32. Attorney Hardberger made no claim to the Office of Servicemen's Group Life Insurance for insurance pro-

ceeds prior to payment of the entire amount of $15,000 to Donna M. Gates.

The foregoing having been found by the Court to be fact, the issue presented before the Court is whether the Plaintiff is entitled to any or all of the proceeds of insurance under the policy. The policy in question is Servicemen's Group Life Insurance, 38 U.S.C. § 765 et seq. Servicemen's Group Life Insurance is provided for members of the uniformed services on active duty under Policy G32000 (Defendants' Exhibit B), issued by the Prudential Insurance Company of America to the Administrator of Veterans Affairs under authority contained in 38 U.S.C. § 765 et seq. Prudential established an Office to administer the program known as the Office of Servicemen's Group Life Insurance; that office is located at 212 Washington Street, Newark, New Jersey 07120. Under established procedures, when a serviceman dies, his armed force forwards all pertinent information in his service file directly to the Office of Servicemen's Group Life Insurance. That office, in turn, determines to whom the insurance should be paid and makes all such payments on behalf of the company.

Under the law which went into effect just prior to the death of Airman Gates, members of the uniformed services on active duty are automatically insured under the Servicemen's Group Life Insurance Policy for $15,000 unless they elect in writing not to be so insured, or to be insured for $10,000 or $5,000 (Public Law 91–291, approved June 25, 1970, amending 38 U.S.C. § 765). Airman Gates was insured for $15,000.

By provisions of 38 U.S.C. § 770(a), the Veterans Administration Regulation 3616, found at 38 C.F.R. 9.16, and of Section 8 of the insurance policy, a member of the uniformed services who is insured under the Servicemen's Group Life Insurance Policy may designate as beneficiary any person, firm, corporation, or legal entity (including the estate of the member, individually or as trustee of his insurance). A beneficiary designation will remain in effect until properly changed by the member or automatically cancelled. Any designation or change of beneficiary will take effect only if it is in writing, signed by the insured, and received prior to death of the member by his uniformed service. A change of beneficiary may be made at any time and without the knowledge or consent of the previous beneficiary.

38 U.S.C. § 770 reads, inter alia:

770. Beneficiaries; payment of insurance

(a) Any amount of insurance under this subchapter in force on any member or former member on the date of his death shall be paid, upon the establishment of a valid claim therefor, to the person or persons surviving at the date of his death, in the following order of precedence:

First, to the beneficiary or beneficiaries as the member or former member may have designated in a writing received by the uniformed services prior to such death;

Second, if there be no such beneficiary, to the widow or widower of such member or former member;

Third, if none of the above, to the child or children of such member or former member and descendants of deceased children by representation;

*Fourth, if none of the above, to the parents of such member or former member or the survivor of them;* (Emphasis added.)

Fifth, if none of the above, to the duly appointed executor or administrator of the estate of such member or former member;

Sixth, if none of the above, to other next of kin of such member or former member entitled under the laws of domicile of such member or former member at the time of his death.

The responsibility rested with the Plaintiff timely to file a claim with the Office of Servicemen's Group Life Insurance within the purview of the requirements of 38 U.S.C. § 770(b), 38 C.

F.R. 9.18(b), and Section 8 of the insurance policy. Plaintiff's failure to do so caused the Defendant Prudential to pay the contested second one-half of the proceeds of the insurance to the serviceman's mother after the one-year period had elapsed.

■ Plaintiff argued that he made a valid and effective claim, but the facts do not support his contention. He asserts that inquiries addressed to various National Guard personnel by himself and by his attorney, Tom Lee, regarding the existence of insurance proceeds and how claim might be made, amounted to making a claim. Requests for information, without a present demand for payment, are inquiries only, and the courts have uniformly held that such inquiries do not constitute a claim. McEntire v. United States, 115 F.2d 429 (5th Cir., 1940); Werner v. United States, 86 F. 2d 113 (2nd Cir., 1936); Wang v. United States, 302 F.2d 262 (2nd Cir., 1962). Attorney Hardberger's letter of August 26, 1971, contained words of demand, but it was undisputed that such letter was never received in the Office of Servicemen's Group Life Insurance. In fact, the Office of Servicemen's Group Life Insurance never received notice of any claim by Hardberger until after all insurance proceeds had been paid to Donna M. Gates. Payment of all of the death benefits to decedent's mother by the Prudential bars the Plaintiff from any recovery under the policy by authority of the provisions of 38 U.S.C. § 770(b), 38 C.F.R. 9.18(b), and Section 8 of the policy itself. 38 U.S.C. § 770(b) provides inter alia:

> If any person otherwise entitled to payment under this section does not make claim therefor within one year after the death of the member or former member, . . . payment may be made in the order of precedence as if such person had predeceased the member or former member, and *any such payment shall be a bar to recovery by any other person.* (Emphasis added.)

■ Plaintiff also argued that the United States should be liable for the negligence of its alleged agents. No employee of the Federal Government sought to mislead or deceive the Plaintiff; and in any case, the Plaintiff was on notice of how to apply for the proceeds of the insurance by the United States statutes and the Code of Federal Regulations. In Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 68 S.Ct. 1, 92 L. Ed. 10 (1947), the Supreme Court held:

> And so Congress has legislated in this instance, as in modern regulatory enactments it so often does, by conferring the rule-making power upon the agency created for carrying out its policy . . . . Just as everyone is charged with knowledge of the United States Statutes at Large, Congress has provided that the appearance of rules and regulations in the Federal Register gives legal notice of their contents. 49 Stat. 502, 44 U.S.C. § 307, 44 U.S.C.A. § 307.

Accordingly, the Wheat Crop Insurance Regulations were binding on all who sought to come within the Federal Crop Insurance Act, regardless of actual knowledge of what is in the Regulations or of the hardship resulting from innocent ignorance. The oft-quoted observation in Rock Island, Arkansas & Louisiana Railroad Co. v. United States, 254 U.S. 141, 143 [41 S.Ct. 55, 66 L.Ed. 188], that 'Men must turn square corners when they deal with the Government,' does not reflect a callous outlook. It merely expresses the duty of all courts to observe the conditions defined by Congress for charging the public treasury. . . .

In the *Federal Crop Ins. Corp.* case, a wheat grower applied to the Corporation's local agent for insurance on his wheat crop, informing the local agent that most of it was being reseeded on winter wheat acreage; but this information was not included in the written application. The Corporation accepted the application subject to the terms of its regulations, and most of the crop on the

reseeded acreage was destroyed by a drought. Notwithstanding the acts of its agent, the United States was held not to be liable even if its employee did mislead the claimant. 330 U.S. at 380, 381.

In the instant case, neither Captains Heath nor Bell misled the Plaintiff or any of his representatives. Further, the representatives of the United States furnished to Prudential the best information available with which to locate the Plaintiff so he could apply to the Office of Servicemen's Group Life Insurance for the proceeds of the policy.

Plaintiff contends that either Captain Heath or Captain Bell, or both, were agents of the United States, and that Captain Heath either failed to conduct a search to find the Plaintiff or conducted a negligent search. In an analogous case, Kimble v. United States, 345 F.2d 951 (D.C.Cir., 1965), the Court held that the Civil Service Commission was not negligent in failing to locate an employee's widow and advise her of her rights to file a claim under the Federal Employees' Group Life Insurance Act so as to render the United States liable to the widow even though insurance proceeds had been paid to the employee's common-law wife as guardian of his children since the Government had no duty to seek out possible claimants. This decision was based partly upon the Government's position as policy holder rather than insurer (as is the case at Bar), and upon lack of any precedent for imposing such a duty upon employers who provide group insurance to benefit their employees. The Court also noted in that case that the statute, as here, required persons in the statutorily preferred beneficiary classes to file claims within a set time. The Court further held that the statutory scheme presupposed that claimants would assert their own claims and that even a negligent search undertaken by the United States would not cause it to be liable to one whose claim was not timely filed. This case is cited favorably in Shannon v. United States, 417 F.2d 256, 261 (5th Cir., 1969).

For the reasons stated above, neither the Defendant United States nor the Defendant Prudential has breached a duty to the Plaintiff and thus this Court finds for the co-defendants in that the Plaintiff recovers nothing from this suit. Court costs are assessed against the Plaintiff.