**Albert H. GATES, Plaintiff-Appellant,**

v.

**UNITED STATES of America and Prudential Insurance Company of America, Defendants-Appellees.**

**No. 73-1162.**

United States Court of Appeals,
Fifth Circuit.

July 11, 1973.

---

Phillip D. Hardberger, Donald J. Walheim, San Antonio, Tex., for plaintiff-appellant.

James D. Baskin, Jr., San Antonio, Tex., for Prudential Ins. Co. of America.

C. J. Calnan, San Antonio, Tex., for the United States.

Before JOHN R. BROWN, Chief Judge, and COLEMAN and DYER, Circuit Judges.

COLEMAN, Circuit Judge:

Albert H. Gates, the father of a deceased serviceman, sued the United States and the Prudential Insurance Company of America to recover his statutory share of the proceeds of Serviceman's Group Life Insurance (SGLI), 38 U.S.C. § 765 et seq. The trial court denied recovery, Gates v. United States, 351 F.Supp. 273 (W.D., Tex., 1972). The District Judge was of the view that the father had failed to make a valid and effective claim within the required one year period. For the reasons hereinafter set out we affirm the judgment of the District Court.

About July 18, 1970, Airman Billy Lee Gates was killed in an automobile accident in San Antonio, Texas. Airman Gates was on annual active duty as a member of the 149th Tactical Fighter Group, Texas Air National Guard, stationed at Kelly Air Force Base. He was insured under Serviceman's Group Life Insurance for $15,000. The insurer was Prudential Life Insurance Company but the policy holder was the Administrator of Veterans Affairs.[1]

Since the insured had not designated a beneficiary under the policy and since he left no wife or children, his parents, Albert H. Gates and Donna M. Gates, were the beneficiaries under the policy, 38 U.S.C., § 770. From the insured's emergency data form the Air Force obtained the following addresses of his divorced parents:

Albert H. Gates
Spring Lake Mobile Home Estates
Kingston, New York 12401

Donna M. Gates
2713 S.W.S. White Road
San Antonio, Texas 78222

The decedent's military unit at Kelly Air Force Base had been assigned the responsibility of casualty assistance by the Air Force Military Personnel Center, Air Force Casualty Division, Randolph Air Force Base, Texas. Captain Earl C. Heath, of the 149th Tactical Fighter Group, was the designated casualty assistance officer on the case.[2]

The designated unit was able to locate and render casualty assistance to the mother at the address given. The attempt to notify the appellant-father at his New York address by a telegram dated July 19, 1970, was unsuccessful because immediately prior to his son's death appellant had left for San Antonio, via Oseola, Pennsylvania. However, a letter from the grandparents advising him of the death of his son reached

---

1. Under the Serviceman's Group Life Insurance program, the Veterans Administrator is authorized to purchase from life insurance companies a policy or policies of life insurance. The companies issuing such policies shall establish an administrative office at a place designated by the Administrator. The policies may not exceed $15,000 and are to insure the lives of servicemen on active duty. For each month a serviceman is insured, the costs of the monthly premium are deducted from his pay and remitted to the Veterans Administration. The Administrator contributes costs traceable to the hazards of active duty. 38 U.S.C., §§ 766–769.

2. The Casualty Division of the Military Personnel Center at Randolph Air Force Base, also at San Antonio, has the responsibility to oversee the Casualty Assistance Program for the entire Air Force worldwide. Casualty Assistance is designed to furnish families of Air Force casualties with counseling and aid in obtaining monetary benefits and privileges which may be due them. Because of the large responsibilities in the undertaking of casualty assistance, specific responsibilities are assigned to lower commands to provide better personalized assistance.

852

Gates in Oseola, where he was staying with a relative.

By August, 1970, appellant had returned to San Antonio and soon moved in with his parents *about a block and a half from the residence of his former wife, Donna Gates.* During the succeeding months, appellant and his former wife saw each other intermittently. Appellant's father died in April, 1971, and Donna Gates saw her former husband at the funeral. About June, 1971, appellant had coffee at a cafe with his former wife. Also, the Gates had a younger son, Ricky, who had been in New York with his father. Upon arriving in San Antonio, Ricky took up residence with his mother but would see his father frequently.

Soon after returning to San Antonio, appellant took a job working at a service station. Also working at that service station was the son of Captain Louis W. Bell, officer in charge of the decedent's military unit. Through this son, appellant met Captain Bell and in about September, 1970 they discussed the death of Gates' son and the insurance policy in question. Captain Bell told Gates that a board of inquiry would have to complete its investigation before it was known whether he would be eligible to receive the benefits. Shortly thereafter, Captain Bell told Captain Heath of this conversation. In other words, the casualty officer in charge of the case knew that Gates was alive and in San Antonio.

On September 22, 1970, Prudential sent insurance benefit claim forms to both appellant and Mrs. Gates at the addresses provided by the Air Force. The letter to appellant was returned with the notation "Moved, Address Unknown".

On September 29, 1970, Mrs. Gates made a claim for the death benefits. On October 13, 1970, Prudential paid 50% of the death benefits ($7,500) under the Serviceman's Group Life Insurance Policy to Mrs. Gates. On the same day, Prudential sent another letter to appellant at the New York State address which was also returned with the notation "Moved, Address Unknown".

Prudential wrote separate letters to Donna M. Gates requesting a correct address of appellant on December 15, 1970 and again on January 22, March 8, May 3, and June 18, of the year 1971. Mrs. Gates did not reply to any of the above correspondence except to return to Prudential the original of the letter dated June 18 along with a letter from the Department of the Air Force which advised her that if the father of the decedent did not make a claim within one year of the decedent's death, the law would presume the father predeceased the son.

To drop back in the chronology, on November 9, 1970, Captain Heath, knowing that Gates was alive and in San Antonio, wrote a letter to Mrs. Gates explaining that she would be able to collect the remaining one half of the insurance proceeds if appellant failed to make a claim within one year of the son's death. He then advised her, "I would suggest that you should write the SGLI and explain that the father has left the State of Texas and his address is unknown and an attempt by all concerned at the time of the death of Billy, to locate him, was in vain.' I would reference the attached (extra) copy of the U. S. Code so they will know you are aware of the entitlement".

We are thus presented with an indisputable picture of an officer in charge of the case who not only failed to notify Prudential that the father was alive and in San Antonio but who actively advised the divorced ex-wife to perpetrate a fraud against the rights of her ex-husband—a fraud, incidentally, from which she would take $7,500 which lawfully belonged to Gates.

At least as early as May, 1971, appellant engaged an attorney in San Antonio to ascertain whether he had any death benefits arising from his son's death. This attorney called Captain Heath to inquire about any claim the appellant might have. Captain Heath was very helpful, indeed. He told the attorney that a criminal warrant was out for the appellant. The alleged basis for this

warrant was that appellant had co-signed a note on an automobile loan for the decedent. The note was several payments behind and appellant had possession of the car. At the trial, no such warrant was introduced in evidence and appellant denied the existence of it.

When Captain Heath asked for appellant's address so it could be turned over to the credit union, the attorney declined to give the address since he only represented appellant on a civil, not a criminal, matter. Although he was in charge of the case, Captain Heath advised the attorney to contact Captain Reese L. Harrison, Jr., Judge Advocate of the 149th Tactical Fighting Group.

In a telephone conversation with the attorney Captain Harrison told him how to make the claim and warned him to file the claim before the anniversary date of the death. Captain Harrison also called Captain Heath and advised him to send information to the attorney as to the procedure in applying for the insurance. In response to Captain Harrison's request, Captain Heath wrote the attorney on May 18, 1971 that claims should be filed with the Office of Serviceman's Group Life Insurance and included the address in Newark, New Jersey. This attorney took no further action.[3]

In reply to July 28, 1971 correspondence from Prudential, Mrs. Gates wrote on the bottom of the original of the letter that "No, I definitely do not know anything about my son's father. He was unable to be found at the time of his death. I haven't heard from him and have no idea where he is. I do understand that if he didn't claim his insurance within one year from death I was to receive the remaining half".

On August 10, 1971, Prudential received a copy of a Veterans Administration telegram stating that the only address the Veterans Administration had for appellant was the New York address.

Appellant later engaged the services of another attorney, Phillip Hardberger. On August 26, 1971, this new attorney wrote to the Judge Advocate at Kelly Air Force Base stating that he was making a claim for the insurance benefit proceeds. Apparently, this letter was lost in the Air Force and was never received in the Office of Serviceman's Group Life Insurance.

On August 30, 1971, the SGLI made an administrative determination that appellant had predeceased the insured. Accordingly, on September 1, 1971, Prudential forwarded to Donna M. Gates a check for $7,500, representing the remaining 50% of the insurance proceeds.

Thus the appellant was defeated of $7,500 to which he was entitled and his ex-wife received $7,500 to which she knew that she was not entitled.

The facts of this case prompt us to look upon it with a badly jaundiced eye. As this Court said in Shannon v. United States, 5 Cir., 1969, 417 F.2d 256, the government is deeply involved in this insurance program, it controls it, and it had a duty to make known to the Prudential Insurance Company of America any facts which would have enabled that company to have processed a claim from Albert H. Gates, including sending him the proper forms upon which to make application for that to which he was indisputably entitled. Instead of performing this duty the military officer specifically assigned to that duty not only suppressed facts known to him but also advised the former wife to tell a known falsehood, which both he and she knew would frustrate the insurance company in its efforts to locate Gates and would also put her in possession of money she had no real right to receive. This not only merits stern condemnation but un-

---

3. The attorney testified that after receiving the May 18, 1971, letter from Captain Heath he called appellant and asked him to come in and sign a formal contract to represent him on this matter. Appellant never came to sign the contract so the attorney did not file a written claim with SGLI. Appellant contends that he never heard from the attorney after their initial conversation, so he engaged another attorney.

der ordinary circumstances would raise serious questions of liability, not only on the part of the government but also upon Prudential, which chose to rely on the government to process the information upon which it was to discharge its policy (contractual) obligations.

This, however, is not the end of the matter. In this litigation we have before us solely the question of liability to Gates under the terms of the statute and of the policy issued thereunder. We consider the holding of the court below that the "United States of America did not know plaintiff's whereabouts at any time prior to the payment of all insurance proceeds to Donna M. Gates" to have been clearly erroneous. Captain Heath knew that Gates was in San Antonio and within the four corners of this case that knowledge should be imputed to the United States.

Nevertheless, 38 U.S.C. § 770(b), expressly provides as follows:

"If any person otherwise entitled to payment under this section does not make claim therefor within one year after the death of the member or former member, or if payment to such person within that period is prohibited by Federal statute or regulation, payment may be made in the order or precedence as if such person had predeceased the member or former member, and any such payment shall be a bar to recovery by any other person."

The plain terms of the statute, which were carried forward in the regulations and in the policy itself, dictated that once Gates knew of the death of his son and of the possibility of insurance benefits he could not then rely on the misfeasance of others. Even if he met with obstacles, he had the affirmative duty of making application, and that within twelve months. The appropriate offices of the United States were open and functioning. If Heath was the primary functionary, and he no doubt was, it must also be noted that Gates personally never contacted Heath. Instead of filing application, Gates dawdled and stood afar off. Like other citizens in their dealings with the government he was charged with a knowledge of the law. His failure to comply had to be, in the ultimate, his own fault. This is not a case in which Heath, or anyone else authorized to speak, had informed him that he had no insurance benefits or that it would be useless for him to apply. This is not a case in which the death of his son was concealed from him until after the expiration of the statutory period for making application. Nor is it a case in which for lack of notification Gates was allowed to remain in ignorance of his probable rights.

The situation is directly analogous to the designation of beneficiaries of Serviceman's Group Life Insurance. There must be compliance with the statutes and the regulations, or there is no designation. In that regard a letter written by a serviceman offers no legal basis for doing what the serviceman failed to do, i. e., designate a beneficiary or beneficiaries by a writing received in the uniformed services prior to his death, as required by statute, Prudential Insurance Company of America v. Warner, 328 F. Supp. 1128 (W.D., Va., 1971). Even where a serviceman signed a regular beneficiary change form and had supplied his mother with a verbatim copy the attempted change was ineffective where not received by his uniformed services prior to his death, as required by 38 U.S.C. § 770, Stribling v. United States, 8 Cir., 1969, 419 F.2d 1350.

Thus, the conduct of Captain Heath and of the ex-wife as revealed by this record, inexcusable as it may have been, could not cure the inaction of the plaintiff-appellant.

The judgment of the District Court is

Affirmed.