DODD ET AL. v. REESE ET AL.

[No. 27,354. Filed February 5, 1940.]

*George H. Koons,* of Muncie; *David A. Myers,* of Greensburg; and *Richard L. Ewbank,* of Indianapolis, for appellants.

*Walter L. Ball, Oren M. Rarrick* and *Paul E. Leffler*, all of Muncie, for appellees.

FANSLER, J.—The appellant John J. Dodd is a member of the bar of this court. In June, 1935, he filed in the Delaware Superior Court a petition by Emma L. Postel for the adoption of Ardra Wise, an adult, and the consent of Wise to the adoption, and procured an order of adoption and for the change of Wise's name to Ardra Wise Postel to be entered by the court. He prepared, and witnessed, and was named as executor in, the will of Mrs. Postel, which was executed on the 3rd day of July, 1935. Mrs. Postel died on August 3, 1935.

On the 3rd day of March, 1937, the appellees Reese, nephews of Mrs. Postel, filed a complaint seeking to set aside the adoption proceedings, upon the ground that they were procured by fraud. It is alleged that Mrs. Postel was for more than two years prior to June, 1935, and until her death, "a very sick woman," and of unsound mind, and without rational moments; that Dodd was her attorney; that he entered into a conspiracy with Anna and William Cope to defraud the plaintiffs Reese; that, conspiring with the Copes, Dodd determined that it was necessary for Mrs. Postel to adopt Ardra Wise as her heir at law so as to leave no incentive for her nephews and nieces to contest a will which they intended to procure to be executed; that Dodd prepared a petition for adoption, in the presence of Anna Cope, while Mrs. Postel was in a hospital in Chicago, and caused the signature of Mrs. Postel to be signed to the petition without her knowledge or any act of hers; that Wise was unwilling that the order of adoption should be made because of knowledge that Mrs. Postel was of unsound mind, and that he was

unwilling to proceed to a change in his name without the consent of his father, but that Dodd pressed and persuaded him to consent to the adoption; that at the time the petition was presented "the court insisted that it had misgivings about her mind and would rather have her present at the time of the adoption"; that, notwithstanding these objections, Dodd "corruptly and fraudulently," procured the order to be made; that, as Dodd and Wise left the court room, Dodd winked at Wise and said: "Didn't I put it over on the Court?" A multitude of facts are set out in great detail, which, if true, establish that Dodd, representing himself as the attorney for Mrs. Postel, but, in fact, wickedly, corruptly, and fraudulently conspiring with others, caused a petition for adoption to be filed in her name, without her knowledge or consent, and at a time when she was dying, and without mental capacity sufficient to have known or comprehended what was done; and that he procured an order of adoption to be made, over the protests of Wise, who was present, and notwithstanding the expressed scruples of the presiding judge.

Wise was made the sole defendant to this petition, and a summons was issued, returnable on the 15th day of March, 1937, and served upon Wise on March 3, 1937. On the 11th day of March, 1937, Wise filed a verified answer: "That the averments set out in said petition of the plaintiffs are true and correct, as Defendant verily believes. That he offers to the court no objection to the granting of the prayer therein contained." On the 13th day of March, 1937, the appellant Dodd appeared and filed a verified petition for authority to intervene as a defendant. On the 2nd day of April, 1937, the petition to intervene was amended. It is filed in the name of John J. Dodd, and John J. Dodd,

as an attorney at law and officer of the court. It expressly denies in detail all of the facts alleged in the complaint which seek to establish fraud upon his part. It asserts that at the time the petition for adoption was filed Mrs. Postel was of perfectly sound mind; that the petition was prepared at her direction and request, and was personally signed by her, and that it was filed and the order of adoption procured at her request; that he was admitted to practice law in 1925, and that he had practiced continuously until the present time, and that he is of good standing as a member of the bar and as such an officer of the courts; that, while he is not named as a defendant in the complaint, the cause of action is based upon a charge of fraud upon his part; that it does not charge fraud upon the part of Mrs. Postel or the defendant Ardra Wise Postel; that the charges of fraud against him are false, and were known to be false at the time they were made; that, by his conduct as an attorney, he has built a reputation for truthfulness, honesty, and fair dealing, and has built up a large and lucrative and growing practice; that he has gained the confidence of the judges of the courts in which he practices; that his reputation and standing are of great value to him and cannot be estimated in money alone, but that their value to him is more than $50,000, and more than all of the estate left by Mrs. Postel; that if the plaintiffs procure judgment it will be an adjudication that he, and not Mrs. Postel, was guilty of wicked, corrupt, and fraudulent conduct, and of a fraud upon the court; that he has an interest in the proceeding, and should in justice and equity be permitted to intervene and file pleadings and answers and present his defense. He sets out in his petition the will of Mrs. Postel, containing eighteen items and disposing of various items of property to a

sister and various nephews and nieces, and others, including Ardra Wise Postel.

On the 5th day of April, 1937, the plaintiffs filed a motion to strike out and reject the appellant's amended petition to intervene, and on the same date the defendant, Ardra Wise Postel, filed a motion to strike out and reject the petition to intervene. On the 20th day of May, 1937, Ardra Wise Postel filed a petition for leave of court to withdraw his answer and file an answer in general denial. In this petition he says that the verified answer, in which he says that the averments of the complaint are true and he offers no objection to the granting of the prayer thereof, was signed while he was at work, and that he did not read it, and did not know that he was making a sworn statement; that, as a matter of fact, he did not want to state, and does not now want to state, that the averments of the petition are true and correct; "that as a matter of fact a portion of said averments in said petition, in the judgment of the defendant are not true and correct"; that he does not believe Mrs. Postel was for more than two years incapable of understanding and comprehending the nature and consequences of her acts, and that he does not believe she was of unsound mind for six months before her death, or at any time when he saw her; that, as to the allegations concerning the manner in which the petition for adoption was filed, he knows nothing; that he knows nothing of a conspiracy between Dodd and any other person to defraud the plaintiffs, "and does not believe that any such conspiracy was ever entered into or existed"; that the statement in the petition that, after they left the court room, Dodd winked his eye and said to Wise: "Didn't I put it over on the court?" is not true; "that any and all parts of said petition which avers, or tends

to aver, that any deception or fraud was practiced or undertaken on the court, is not true, and that this defendant does not believe that said John J. Dodd either undertook or intended to undertake to in any way deceive or defraud the court"; that there are other parts of the petition, the truth of which he does not desire to admit; "and this defendant does not desire to state in his said answer heretofore filed, that he offers to the court no objection to the granting of the prayer contained in said petition." He asked for leave to withdraw his answer and to file an answer in general denial.

On the 25th day of May, 1937, the Hon. Claude C. Ball, Judge of the Delaware Superior Court, declined further jurisdiction because he was a material witness, and, by agreement of the parties, the cause was transferred to the Delaware Circuit Court. On the same date the Delaware Circuit Court made an order impounding all the papers and pleadings in the case, and on the 7th day of June, 1937, the court sustained the plaintiffs' motion to strike out the appellant's petition to intervene as an individual and as an attorney at law. The court made an order inviting the appellant to appear and act as *amicus curiae* in the cause. The motion of Ardra Wise Postel to withdraw his verified answer was overruled.

Error is assigned upon the sustaining of the appellees' motion to strike out the petition of the appellant to intervene.

Section 2-222, Burns' 1933, § 38, Baldwin's 1934, provides: "The court may determine any controversy between the parties before it, when it can be done without prejudice to the rights of others or by saving their rights; but when a complete determination of the controversy can not be

had without the presence of other parties, the court must cause them to be joined as proper parties. And when, in an action for the recovery of real or personal property, a person not a party to the action, but having an interest in the subject thereof, makes application to the court to be made a party, it may order him to be made a party by the proper amendment." This section has been held to vest the court with broad discretion in the admission of parties, and it has been generally said that a party should only be brought in or permitted to intervene when he is interested in the subject-matter of the action or a necessary party to the settlement of the controversy. It has been repeatedly held that the right to intervene is not limited to actions for the recovery of real or personal property. But the word "interest" seems generally to have been considered as referring to some property interest; perhaps because the cases in which the intervention has been sought involve property rights.

The action here is to set aside a judgment, and, if the plaintiffs are successful, the result will be to vacate the judgment of adoption. But the issue raised by the complaint is one of fact. The question to be determined is whether the allegation that John J. Dodd was guilty of fraud in procuring the judgment to be entered is true. The parties to the original judgment were Mrs. Postel and Ardra Wise. Neither of them is charged with fraud. It is clear, as the appellant asserts, that he is more highly interested in the result of this action than any one else. Mrs. Postel is dead. The interest of Wise involves but a comparatively small amount of property in any event, but the appellant alleges that for a number of years he has practiced law; that he is in good reputation as a lawyer, and that he has a valuable and growing

practice, the money value of which he is unable to appraise, but he asserts that it is worth more than $50,000 to him, and that it is worth more than the entire estate of Mrs. Postel. This is not an unreasonable assertion. That a good reputation for honesty, and uprightness, and fair dealing, is a valuable thing has never been doubted, and actions may be maintained for injury to good reputation, and recovery may be had independent of any proof of financial loss by reason of the injury, but to destroy the reputation of a practicing lawyer is undoubtedly to injure him financially, if not to destroy entirely the possibility of his continuing in the practice of his profession. To say then that the appellant will not be injured, or even that he will not be financially injured, by a judgment based upon a solemn determination by the court that he is guilty of a gross and unconscionable fraud, is absurd.

In divorce cases, in the absence of a statute permitting it, persons who are charged with being guilty of adultery with the defendant are denied the right to intervene and defend against the charge. In *Clay* v. *Clay* (1880), 28 N. Y. (21 Hun.) 609, 610, in denying the petition of a woman to intervene in a divorce case where she was charged with having committed adultery with the defendant husband, who had been defaulted, the court said: "The court will, however, look to it that the testimony is clear and convincing before granting the plaintiff relief which must necessarily reflect upon, and, *pro tanto*, convict the petitioner." It cannot be doubted that a feeling that justice requires that the person charged with wrongdoing should have an opportunity to be heard in such cases prompted the enactment of the statutes now found in many states permitting intervention. There are cases which hold that, in an action to set aside a judgment alleged to

have been obtained through fraud, strangers to the judgment who are charged with being parties to the fraud may properly be made parties defendant by the plaintiff. Daniell's Ch. Pleading & Practice (Perkins' Ed.) p. 354; *Huggins* v. *King et al.* (1848), 3 Barb. 616; *Hill* v. *Reifsnider* (1874), 39 Md. 429. The rule is generally justified upon the ground that, if the allegations are true, and they are guilty of fraud, they should at least be chargeable with the costs.

It seems that in England, equity permitted the intervention of a stranger where the pleadings contained scandal against him. But the word "scandal" was used in a limited sense, meaning only impertinent or immaterial matter in the pleading. If the allegations were pertinent and material to the issue, the stranger was not permitted to intervene. We have been unable to discover whether in these cases the right to intervene was asserted upon the theory that the petitioner had a substantial and material interest in sustaining his good reputation, and we find no civil action in which it appears that such a contention was pressed upon the court except, the divorce cases where the petition was denied upon the ground that the action was purely statutory, and that the statute controlled the admission of parties. Appellees' contention, that intervention will not be permitted except upon a showing of some property interest that will be affected, finds strong support in the authorities.

But the Constitution of Indiana recognizes that reputation is a valuable thing, and that one who bears a good reputation has an interest in protecting it. Section 12 of Article 1 provides: "All courts shall be open; and every man, for injury done to him in his person, property, or reputation, shall have remedy by due course of law." Here reputation is put upon an

equality with property, and a remedy is contemplated for injury to reputation the same as injury to property. If an injury is done one's property, he may recover for it, and, in many cases, if it is anticipated, a court of equity will enjoin the injury. If the result of an action between others may effect or work an injury to property, the right to intervene is not questioned; and if there is any good reason why a court of equity and conscience should permit intervention to protect property against injury that does not apply with at least equal weight and force to reputation, we have been unable to discover it. It is true that, while courts of equity will some times intervene by injunction to prevent injury to property, they decline to intervene by injunction to protect reputation against libels and slanders. The reason given is that there is an adequate remedy at law for damages for such injuries to reputation. But that is not always true. Statements which would otherwise be actionable are privileged when they are made in a pleading filed in a judicial proceeding, and it is clear that, though this privilege strikes down the remedy at law for damages, a court of equity will not entertain a suit to enjoin the assertion or perpetuation of the injurious matter, since that would involve a trial of the issue presented in the original case. The appellant then has no remedy by due course of law for the injury to his reputation, and the resultant damage to him, which he asserts, unless the court in which the action is pending shall be open to him, and unless he shall be permitted to there deny and defend against the charges. It is true that the trial court invited John J. Dodd to appear *amicus curiae*, but this is by favor, and not as of right, and it does not carry with it the right to exceptions and appeal from adverse rulings. If the action

in which he sought to intervene involved a small bit of land, of little value, or a horse, or a cow, or a few dollars, he would be held to have an interest in the result since, it might strike down and injure a property right. It seems inconceivable that a court of conscience can say that in this action, the result of which may brand him as guilty of the most despicable conduct, which may destroy his opportunity to earn a comfortable living at his chosen profession, and which may diminish the esteem in which he is held by his friends and neighbors, and cause his family to hold a less respected place in the community, he has no interest, and that he cannot be injured in his substantial rights by the judgment.

In *State ex rel. Lopez* v. *Killigrew et al.* (1931), 202 Ind. 397, 401, 402, 174 N. E. 808, 810, which involved a petition for a new trial in a criminal action through *coram nobis,* it was contended by the state that, since the defendant had served the sentence and paid the fine and costs imposed upon him by the judgment, and, since there was no way in which he could recover the fine and costs, a new trial would present a moot question. The court said: "Granting that he cannot recover the amount of the fine and costs imposed upon conviction in the first trial, it does not follow that relator's effort to clear his reputation presents a moot question. There are cases holding that an appeal in a criminal case will be dismissed as moot upon a showing that the appellant has satisfied the judgment; but the better reasoning is with the cases to the contrary, and the theory and result of the latter cases are more consonant with justice. The right of reputation was early recognized in Anglo-American law and the machinery of legal redress is at the disposal of any person to vindicate his good name. Many utterances of a

defamatory nature are actionable *per se* and, in the very beginning of the law of defamation, the rule was established that language which imputed a species of misconduct to which the law attached a criminal punishment was actionable *per se,* without any allegations or proof of actual pecuniary injury. Thus it is clear that the law recognizes and protects the individual's interest in his reputation from defamation that imputes criminal misconduct, regardless of pecuniary damage; and it would seem absurdly inconsistent to dismiss as moot a proceeding initiated to clear one's reputation of the infamy and stigma resulting from an allegedly erroneous conviction on a criminal charge, even though the one seeking vindication cannot, for reasons of public policy, recover the amount of his fine and costs, nor compel the state to pay damages for his unjust imprisonment." It is then pointed out that the United States government was about to deport the defendant because of his conviction, and that if he were granted the new trial sought, and were acquitted upon the trial, the penalty of deportation would be avoided. It is clear that in that case the court recognized that the defendant's interest in clearing himself of the stigma of guilt involved considerations more material and substantial than the property loss involved in the payment of the fine and costs and the loss of liberty involved in his imprisonment.

The case last referred to supports the appellant's contention that he has a substantial and material interest in sustaining and protecting his good reputation from blemish. If a judgment should be entered for appellees it will, in the language of the New York court, "necessarily reflect upon, and, *pro tanto,* convict" him, and it will stand forever, and he will be powerless to attack or expunge it. In all

fairness then he should not be required to entrust the defense of a thing that is so important to him to the defendant, who has no interest, nor should he be limited to appearing by grace as *amicus curiae*. It is not for the guidance of the court that he seeks to intervene, but to protect a cherished and valuable right, and to prevent a great injury and wrong to him. There is a maxim that: "Equity will not suffer a wrong to be without a remedy," and it has been said that the jurisdiction of a court of equity does not depend upon the mere accident of the court having in some previous case, at some distant time, granted relief under similar circumstances. If it were so, equity would not have grown and developed. If this case is permitted to go to judgment which will injure the reputation of the appellant, when he might have successfully defended against the charges, if permitted, it will be even more difficult to find a remedy for the wrong. The only thing that seems to stand in the way of permitting the appellant to intervene now is that it never has been done. But the principle that a stranger may intervene where he has a present substantial and material interest in the result has long been established, and we cannot but conclude that the appellant has such an interest here, and that he must be permitted to intervene.

The learned judges of the trial court and the Appellate Court no doubt felt constrained to follow what seemed the dictates of precedent, but we feel justified in applying a recognized principle under circumstances where it seems never to have been applied before.

Judgment reversed, with instructions to sustain the appellant's petition to intervene, and for further proceedings.

Note—Reported in 24 N. E. (2d) 995, 128 A. L. R. 574.