Curtis W. HANKS, Plaintiff
and Appellant,

v.

Margaret HANKS, Defendant
and Appellee.

No. 13784.

Supreme Court of South Dakota.

Argued Jan. 17, 1983.

Decided June 8, 1983.

 

the enforcement of property settlement provisions of the divorce decree by the same method. Our holdings as to alimony and child support are widely accepted in other states. There is mixed authority on the property division issue. Some courts hold that enforcement of property division by contempt power is violative of their constitutional provisions against imprisonment for debt.

Our Constitution, Art. VI, § 15, prohibits imprisonment for debt "arising out of or founded upon a contract."

■ SDCL 25–4–44 gives the trial courts the power to make an equitable division of property belonging to the parties in a divorce action. Sometimes this division requires the payment of cash from one party to the other where it is not economical or practical to divide property in kind. This cash obligation is not the consequence of contract or agreement between the parties, but is an obligation created by the court for the division of the property interests of the parties. The trial court must have, and we hold that it does have, the power to punish for willful and contumacious failure to pay money, as well as transfer of property in kind, ordered by the court to accomplish a division of property in a divorce proceeding.

The appellant contends that his conduct in failing to pay was not comtemptuous.

■ The four elements necessary to be established before a finding of contempt can be made by the court have been frequently recited by this court in previous decisions and as recently as *Rousseau v. Gesinger,* 330 N.W.2d 522 (S.D.1983). The first two elements were admitted by the appellant. His defense was inability to pay, which he has the burden of establishing. *Jameson v. Jameson,* 306 N.W.2d 240 (S.D. 1981). The evidence before the trial court was clear that he had sufficient income to pay the obligations created by the divorce decree. His showing on inability to pay consisted of his testimony that he could not borrow any money and that he was unable to pay. There was no evidence before the

John R. Kabeiseman and Michael E. Ridgway of Brady, Kabeiseman, Reade, Abbott & Johnson, Yankton, for plaintiff and appellant.

William Taylor of Woods, Fuller, Shultz & Smith, P.C., Sioux Falls, for defendant and appellee.

HECK, Circuit Judge.

This case is before us a second time.* Subsequent to our decision, the appellee obtained an order to show cause why the appellant should not be held in contempt for failure to pay the amount awarded as part of the property settlement, alimony, and child support. The appellant in turn requested a modification of the child custody provisions of the divorce decree. The trial court found the appellant to be in contempt of court for failure to pay. The modification of the child custody was refused. We affirm the decision of the trial court.

■ Although we have previously ruled that alimony and child support payments ordered by a trial court in a divorce action may be enforced by the court's contempt power, we have not had occasion to rule on

* *Hanks v. Hanks,* 296 N.W.2d 523 (S.D.1980).

trial court as to the disposition of his income. The trial court was justified in its conclusions that the appellant "has not clearly proven inability to comply with the decree, or that he has complied to the fullest extent of his ability . . . ."

■ As to the non-payment of the alimony, the appellant contends that there was no written order entered by the trial court setting his alimony obligation subsequent to our modification of the award in the original divorce decree. We hold that our modification of the alimony award did not revoke the order originally entered, but only limited the amount to be paid by the appellant. The amount could easily be determined by a simple calculation.

■ Next, the appellant contends that he should not be required to pay child support for the time that he had custody of the children during certain weeks of the summer. The original decree provided that appellant pay to the appellee a specified amount each month of the year for the support of the children. The decree contained no provision for reducing the amount during the time when the children were living with the appellant. Even though his position may seem just and equitable for a reduction of the payments during the time when the children live with the appellant, his remedy was to seek modification of the child support payments, which he did not do. He had no right to withhold the payments absent an order of the court allowing it.

■ The appellant, in the same proceeding, sought a change in the custody order to obtain the dominant custody of his children. Our rule for modification of child custody has been substantially unchanged since its inception. We stated the rule in *Masek v. Masek*, 90 S.D. 1, 6, 237 N.W.2d 432, 434 (1976):

> To state the rule we have adopted in change of custody cases, the parent seeking modification of custodial rights has the burden of proving (1) that there has been a substantial and material change of circumstances since the decree of divorce

was entered, and (2) that the welfare and best interests of the children require the modification being sought. Either factor standing alone will not justify a change of custody—both must be present. This is a heavy burden, but the courts, the parties and especially the children must be protected from endless and vexatious litigation and the resulting uncertainty flowing therefrom.

The trial court concluded that "[t]here has not been a substantial and material change of circumstances since the decree of divorce was entered sufficient to support a change of custody." We believe, in this conclusion, that the trial judge misunderstood the rule in *Masek*. It is clear from the evidence that there was a "substantial and material change of circumstances" since the divorce decree, i.e., the appellee remarried and she and the children moved from South Dakota to Colorado. Since the proof required under the first part of the *Masek* rule was established, it allowed the court to reconsider the placement of the children. However, the misapplication of the first part of the rule may not necessarily alter the result.

In order for the trial court to make a change of custody, both factors must be proven: (1) a substantial and material change of circumstances, and (2) that the welfare and best interests of the children *require* a change of custody.

As to the second part of the rule, the trial court concluded that "[t]he welfare and best interests of [the children] do not require modification of the custodial aspects of the divorce decree . . . ."

■ Although the evidence does reflect some areas which may be less than ideal circumstances for the children, we cannot say that the trial court abused its discretion in disallowing the change of custody. The appellant simply did not establish by a preponderance of the evidence that the change was in the best interests and welfare of the children. In this respect we assume that the trial court took into consideration all of the evidence before it in making its decision. It is not essential that the

trial court enter a finding of fact on every fact presented, but only those findings of fact essential to support its conclusions.

 The appellee has requested allowance by this court of attorney fees for her defense of this appeal. Since we hold that there was a change of circumstances since the divorce decree which would allow the trial court to consider custody of the children, and to have court review of that decision, the request of appellee is disallowed.

The judgment of the trial court is affirmed.

WOLLMAN, DUNN and MORGAN, JJ., concur.

HENDERSON, J., concurs in part and dissents in part.

HECK, Circuit Judge, sitting for FOSHEIM, C.J., disqualified.

HENDERSON, Justice (concurring in part, dissenting in part).

## ALIMONY/CHILD SUPPORT

I concur in that aspect of the decision affirming the trial court's action in holding Curtis W. Hanks, appellant, in contempt for failure to pay alimony and child support. The record supports that appellant had sufficient funds to pay same and it appears that he contumaciously refused to pay. The frustration and outrage in his personal life overcame his sense of responsibility. One should understand that his burden was heavy as he was devoted to his family and lost it as outlined in the reported case of *Hanks v. Hanks*, 296 N.W.2d 523 (S.D.1980). Appellant Hanks should be given an opportunity to purge himself of this contempt by the structuring of payments within his income as of the date this decision is handed down. As a new trial judge will hear this case, a factual hearing should be held to update the payment schedule which was originally set forth in the judgment dated February 12, 1982.

## PROPERTY SETTLEMENT AWARD

I dissent to that aspect of the decision holding appellant Hanks in contempt for failure to pay the property settlement award for the reason that, although I theoretically agree he can be held in contempt for not paying, the record does not substantiate his failure to pay the $10,000.00 was willful. In my opinion, appellant was without sufficient income or money to make any payment with respect to the $10,000.00 judgment, and the evidence clearly demonstrated that he had no borrowing capacity. This is borne out by the following: (1) appellant's adjusted gross income for income tax purposes for the year 1978 was $23,227.28; his adjusted gross income for income tax purposes for the year 1979 was $36,340.22; his adjusted gross income for income tax purposes for the year 1980 was $18,469.28; and for the year 1981, appellant withdrew approximately $18,000.00 from his practice of law; (2) from appellant's adjusted gross income, he had to pay federal income tax, mortgage payments, support obligations to appellee and support for the minor children of these parties while they visited him at Lemmon, South Dakota during the summer months; this left appellant with scanty funds to provide for himself and the necessary expenses of caring for his children while in his temporary custody and continuing to support Teresa L. Hanks on a full-time basis; (3) the evidence preponderates that, after payment of his social security taxes, federal income taxes, mortgage payments of $720.30 a month, $300.00 a month child support payments, an average of approximately $350.00 total utility bills per month and $132.00 a month car payment together with necessary and incidental expenses to maintain his daughter who has refused to live with her mother in Colorado, all this documented by the testimony, records, and files herein, appellant had vital expenses of not less than $18,504.00 a year; (4) expense with respect to the operation of appellant Hank's law practice as demonstrated by the federal income tax records, are not in dispute. My opinion is that appellant Hanks simply did not have the money to pay the property settlement award and apparently not being able to borrow

from his banker, he sought to have appellee execute documents to liquidate so that he could pay. She refused. Appellant Hanks, on the property settlement award, found himself between the devil and the dark blue sea.

Of the four requirements set forth in *Myhre v. Myhre,* 296 N.W.2d 905, 907 (S.D. 1980), to establish contempt, two of the necessary requirements are missing, namely the ability to comply with the order and a willful and contumacious disobedience of the order. As I review the findings of fact entered by the trial court, I note that the trial court sets forth the adjusted gross income in 1978, 1979, and 1980. The trial court fails to establish the net income for this lawyer and totally disregards any findings of fact concerning the expenses of this lawyer and his daughter who still maintain the family home at Lemmon, South Dakota. To predicate contempt on adjusted gross income and not net income is error. The trial court is required to make findings on all disputed material issues and the trial court totally disregarded entering findings of fact with respect to the net available income appellant Hanks had to defray the $10,000.00 property settlement award. *Bell v. Midland Nat'l Life Ins. Co.,* 78 S.D. 349, 102 N.W.2d 322 (1960).

## CUSTODY OF CHILDREN

Conclusion of Law number 2 of the trial court states:

> There has not been a substantial and material change of circumstances since the decree of divorce was entered sufficient to support a change of custody. The welfare and best interests of Brian and Rachael do not require modification of the custodial aspects of the divorce decree sought by the plaintiff.

The majority opinion recognizes that this was a misapplication of the rule, I call it the threshold rule, for indeed there existed under these facts a material and substantial change of circumstances. Obviously, three years' passage of time, a remarriage by the mother, a move to Colorado by the mother with her new husband and the two young-est children, the oldest daughter electing to remain with her father and living in Lemmon, South Dakota, was a material and substantial change of circumstances. The trial court should have so found. Then, having made such a determination, the trial court should have exercised its discretion in light of such a finding. Instead, the trial court exercised its discretion without the threshold finding, which leads to a failure of properly considering the obvious and material changes of circumstances in exercising a discretion. In short, the trial court closed the curtain and failed to see the play. It is fundamental that the trial court must consider and pass upon each change of circumstance in exercising its discretion. Conclusion of Law number 2 was clearly erroneous.

It was erroneous for another reason. The findings of fact, upon which it was based, were clearly erroneous. In my opinion, the record clearly supports that the children would be advantaged in their home at Lemmon, South Dakota, with their father, and not with their mother and stepfather in Loveland, Colorado. The oldest girl, Teresa, has refused to live with her mother and lives with her father. The two children, Rachael and Brian, under court order, live in Loveland, Colorado. The custody of these three children is bifurcated and they do not enjoy the advantages of growing up together. I am also troubled by the indifference of the mother and stepfather towards the religious upbringing of these children. Brian Hanks, age 11 when this hearing was held, indicated that he and his sister do not go to church. Appellee and stepfather have indicated that religion is of very little importance to the children. There is little effort made on the part of the mother and her new husband to give these children a religious upbringing. Church is a hit and miss proposition and mostly miss. Religious instruction is missing. This void affects their attitude towards traditional values. When this family all lived at Lemmon, South Dakota, the children regularly attended and received instruction in the faith in which they had been raised. Although there was testimony

before the trial court on this entire religious issue, again the trial court failed to enter any findings of fact or conclusions of law with respect thereto. This is error. *Bell v. Midland,* 78 S.D. 349, 102 N.W.2d 322. I am aghast at the relationship of the stepfather and this boy. The boy characterizes the stepfather as yelling at him, sounding mean, and that he has a problem getting along with his stepfather. This is all supported by a transcript in an incamera setting with the trial judge. The boy's story to the trial court is a sad one: suffering with asthma and allergies, he tells of four cats in the house which are noxious to him; he states that the family in Colorado go up to the mountains nearly every weekend and that it makes him sick to go up to the mountains;[1] he expressed that he had few friends in Loveland, Colorado, and wants to go back to Lemmon, South Dakota, with his friends in his hometown; he unequivocally told the trial court that he wanted to live with his father and that he gets along very well with his sister who lives with his father. As one reads his answers to the trial court's questions, it becomes obvious that he is a very troubled, unhappy boy. Brian Hanks, in my opinion, is a domestic prisoner locked into a deleterious setting he loathes; each day, he longs for the company of his father and his older sister in the home in which he was raised. For the trial court to express in Finding of Fact number 11, that these two children[2] (obviously including Brian) "have a warn [sic] and loving relationship with him," is clearly erroneous and should be reversed. After reviewing the evidence, I am left with a definite and firm conviction that mistakes were made on findings of fact and conclusions of law. *Matter of Estate of Nelson,* 330 N.W.2d 151,

155 (S.D.1983) and *In re Estate of Hobelsberger,* 85 S.D. 282, 181 N.W.2d 455 (1970). The mistakes which I have outlined creates an abuse of discretion on the part of the trial court.

best interests of Brian were not considered. Proposed findings of fact and conclusions of law by appellant pertaining to Brian's troubles requiring treatment by a physician while in Colorado and being free of such health disability in Lemmon, South Dakota, were rejected.

1. Persons in a high altitude have less oxygen to breathe; the heart and lungs must work harder at a high altitude to get the same amount of oxygen as at sea level; Colorado has an average altitude of 6,800 feet; obviously, Brian is fighting for air in the Colorado Rockies. Mountain sickness is not a rare phenomenon. Brian's mother and stepfather were oblivious to his distress. The trial court refused to recognize that his health condition in an extremely high altitude was a material and substantial change of circumstances in Brian's life. The

2. THE COURT: And how do you get along with your step-dad?
RACHAEL HANKS: So so.