Betty J. BEHRENS, formerly known as
Betty J. Milliken, Plaintiff
and Appellant,

v.

Jeanne E. MILLIKEN, Executrix of the
Estate of Ray E. Milliken, deceased,
Defendant and Appellee.

No. 16766.

Supreme Court of South Dakota.

Considered on Briefs March 22, 1990.

Decided Sept. 26, 1990.

Carl J. Koch, Mitchell, for plaintiff and appellant.

John L. Morgan of Morgan, Theeler, Cogley & Padrnos, Mitchell, for defendant and appellee.

SABERS, Justice (On reassignment).

Ray and Betty entered into a divorce stipulation and agreement which was approved by the court. This agreement required Ray to provide $10,000 in life insurance to Betty. Ray breached the terms of the agreement. Although Betty has no remedy against the federal government, we hold that federal law does not prevent her claim against Ray or his estate.

### Facts

Betty J. Behrens Milliken (Betty) was divorced from Ray E. Milliken, Jr. (Ray) in Davison County, South Dakota on January 14, 1976. The divorce decree incorporated a Property Settlement Agreement (Agreement) which was entered into between the parties and approved by the circuit court. The portion of the Agreement involved in this appeal concerns a policy of life insurance which was acquired by Ray during his duty in the Armed Forces. In the Agreement, Ray agreed to maintain Betty as the primary beneficiary of his National Service Life Insurance (NSLI) policy which had a face value of $10,000.00 so long as she survived him.[1]

Ray later remarried. In early 1985 Ray consulted with a service officer at a Veteran's Administration (VA) Center about the insurance policy and the possibility of changing the beneficiary as this had been on his mind for some time. Apparently Ray was hesitant to make any changes because of the court order. After the inquiry, Ray received this handwritten response on a VA form:

MR. MILLIKEN:

YOU MAY NAME *ANYONE YOU WISH* AS BENEFICIARY ON YOUR POLICY. COURT REQUIREMENTS *DO NOT APPLY* TO YOUR GOVERNMENT LIFE INS.

MANY JUDGES SIMPLY ARE NOT AWARE OF THIS FACT.

A NEW FORM IS ENCLOSED; PLEASE COMPLETE & RETURN IT TO US. YOUR CHOICE OF BENEFICIARY IS *TOTALLY UP TO YOU.*

Thank you, R.R. McDaniel.

(emphasis in original).

In March, 1985 Ray changed the beneficiary designation on the NSLI policy from Betty to Lynette Milliken, Ray Jefferis Milliken, LeAnn Milliken, and Stephen Ray Milliken, the children of Ray. Betty had no knowledge of the change.[2]

---

1. The Stipulation and Agreement read:
 10. That the Defendant shall continue to maintain the National Service Life Insurance Policy No. RS 1815-04-96, which is in the face amount of Ten Thousand Dollars ($10,-000.00) with the Plaintiff designated as beneficiary thereof during her lifetime and that any other life insurance policies on his life may be changed to such beneficiaries as he shall from time to time designate. In 1982 an amended decree of divorce was approved by the circuit court, but the insurance policy provision about the beneficiaries remained the same.

2. The parties stipulated at hearing that Ray had full knowledge of the terms of the divorce decree.

Ray died on November 26, 1987. Subsequently, Betty contacted the VA about the proceeds from the NSLI policy. She was informed that Ray had changed the designated beneficiary and that the proceeds would be paid to the new beneficiaries regardless of the Agreement or divorce decree. Betty then filed a claim against Ray's estate which claim was rejected. Betty then sued the estate alleging she had a vested right in the insurance proceeds. The estate responded by stating that the claim was not timely and, even if it was, federal law required distribution of the assets to the named beneficiaries.

Betty and the executrix both moved for summary judgment. Before the hearing she moved to amend alleging fraud, constructive fraud and deceit. After the hearing Betty moved to amend again for breach of contract. The trial court found for the estate ruling that federal law governed the distribution of the proceeds. Betty appeals. We affirm in part and reverse in part.

### 1. Federal Law

■ The matter concerning the distribution of the insurance proceeds from the NSLI policy is governed by federal law and South Dakota law which conflicts with the applicable federal law is preempted. 38 U.S.C. § 717(a) (formerly, 38 U.S.C. § 802(g)) provides:

> The insured [herein Ray] shall have the right to designate the beneficiary or beneficiaries of insurance maturing on or after August 1, 1946, and shall, subject to regulations, at all times have the right to change the beneficiary or beneficiaries of such insurance without the consent of such beneficiary or beneficiaries.

In *Wissner v. Wissner*, 338 U.S. 655, 70 S.Ct. 398, 94 L.Ed. 424 (1950), a widow of a serviceman sued the serviceman's parents who were designated as beneficiaries on his NSLI policy. The widow was originally the beneficiary, but after some time in the military, the serviceman, who had become estranged from the wife, named his parents as his beneficiaries without his wife's knowledge. When the proceeds of the policy were paid to his parents, the widow sued

claiming that under California law the insurance proceeds were community property (as both were California residents) and that she was entitled to one-half of its value. The Supreme Court reversed the ruling of the California Court which had awarded the widow a right to a portion of the proceeds and, in doing so, wrote:

> And since the statute which made the insurance proceeds possible was explicit in announcing that the insured shall have the right to designate the recipient of the insurance, and that "No person shall have a vested right" to those proceeds, 38 U.S.C. § 802(i), 38 U.S.C.A. § 802(i), appellee could not, in law, contemplate their capture. The federal statute establishes the fund in issue, and forestalls the existence of any "vested" right in the proceeds of federal insurance. Hence no constitutional question is presented. However "vested" her right to the proceeds of nongovernmental insurance under California law, that rule cannot apply to this insurance.

338 U.S. at 661, 70 S.Ct. at 401, 94 L.Ed. at 430.

A like result was reached in *Ridgway v. Ridgway*, 454 U.S. 46, 102 S.Ct. 49, 70 L.Ed.2d 39 (1981), a case involving an army sergeant and his wife who were divorced by a Maine court. The decree ordered the sergeant to keep his Servicemen's Group Life Insurance policy in force for the benefit of their three children. He remarried and changed the beneficiary to his second wife. After his death, both women made claims against the proceeds, one for the benefit of the children, the other for her own benefit. The Maine Supreme Court ruled that the second wife held the proceeds as a constructive trustee for the benefit of the children. In reversing the state court decision, the Supreme Court held:

1. State law, even in domestic relation matters, is governed by conflicting federal law. As the federal law gave the service member the right to freely change the beneficiary, his right to do so displaces any inconsistent state law.

2. The insurance proceeds are also protected from any indirect state legisla-

tive or court action such as a state court ruling in placing a constructive trust upon the proceeds or any law attempting to subject the proceeds to creditor claims, attachments, seizures and the like regardless of the nature of the process employed.[3]

In *Ridgway* the Supreme Court also ruled that the serviceman's conduct did not amount to a breach of trust or conversion of another's property. Also, his conduct could not be fraudulent because he had the authority to change the beneficiary, and a person cannot commit a fraud by exercising a given statutory power. The federal cases in accord are found at 70 L.Ed.2d 895, *Federal Pre-emption of State Authority Over Domestic Relations–Federal Cases*, §§ 4(a) and 4(b), and 94 L.Ed. 432, *State Law As Affecting Rights Under National Service Life Insurance–Federal Cases*.

 Since federal law preempts conflicting state law, we hold that our courts may not prohibit the owner of a NSLI policy from changing the beneficiary as he or she desires. Any such order is a nullity under federal law and an aggrieved party has no cause of action for fraud, deceit, conversion, or under most circumstances, for breach of trust.[4]

### 2. State Law obligation arising from contract, operation of law, or court-approved agreement

Betty claims she has a viable cause of action against the estate for Ray's breach of contract. The *Ridgway* and *Wissner* decisions do not specifically deal with this issue because the lawsuits were each aimed at retrieving the *actual insurance proceeds*. However, in *Ridgway* the court stated that the record (from the trial court) "indicat[ed] nothing more than a breach of

contract on the part of the deceased service member." *Ridgway v. Ridgway, supra,* 454 U.S. at 59, 102 S.Ct. at 57, 70 L.Ed.2d at 50. The court also wrote:

> As the trial court intimated, respondents may have a claim against the insured's estate for that breach; the record does not disclose whether a claim of that kind would be collectible.

*Id.*

The *Ridgway* decision stated that the Maine trial court had opined that the divorce decree would give her a cause of action against the estate of her former husband citing the case of *Stratton v. Servicemen's Group Life Ins. Co.,* 422 F.Supp. 1119 (S.D.Iowa, 1976). In *Stratton* the court held:

> If there is legal redress for the violation of the agreement within the divorce decree, precedent suggests that it lay only in an action against Richard Paul Stratton's Estate for breach of that agreement.

422 F.Supp. at 1122. The *Stratton* court relied upon an earlier federal district court case of *Weymann v. Wilson,* 320 F.Supp. 980 (N.D., Fla.1970).

At least one state court, in circumstances remarkably on point with the present case, found the estate of a deceased NSLI insured liable to the decedent's ex-wife in the amount of the NSLI policy which the decedent had been required to maintain for his ex-wife's benefit as a stipulation of their separation agreement. The court in *Will of Hilton,* 88 Misc.2d 760, 388 N.Y.S.2d 985 (N.Y.Sur.Ct.1976), acknowledged that this separation agreement had not, as a matter of federal law, barred the insured from later substituting his new wife as the beneficiary of the NSLI policy. The court also conceded that, upon the insured's death, his

---

**3.** The slight differences in the federal laws applicable to *Wissner* and *Ridgway* were found to be insignificant. *Wissner* involved the National Service Life Insurance Act (NSLIA); *Ridgway* involved Servicemen's Group Life Insurance Act (SGLIA). The former is found at 38 U.S.C. § 717(a) *et seq.*; the latter at 38 U.S.C. § 765 *et seq.*

**4.** A cause of action for breach of trust might exist if the named beneficiary has secured that status by promising the NSLI policy owner that he or she would be a beneficiary for the future benefit of some third party and later, after the owner's death, breaches this trust by retaining the proceeds. *See,* 70 A.L.R.2d 1358, *Trust Or Contract to Hold for Benefit of Another, With Respect to Proceeds of National Service Life Insurance.*

ex-wife had no cause of action against either the federal government or the new beneficiary. Nevertheless, the estate of the decedent was contractually obligated to the decedent's ex-wife, as a matter of state law, in the amount of the NSLI policy because the policy had furnished consideration for their separation agreement.

It is reasonable to conclude that it was the sum of $10,000, payable upon the death of the decedent, which was the consideration, not the National Service Life Insurance policy per se. The National Service Life Insurance policy was merely the conduit. The intent of the parties is clearly visible ... The obligation which the decedent freely assumed in his lifetime and which was reduced to judgment, will be satisfied—but only to the extent that there are assets sufficient to pay claims against decedent's estate....

*Hilton*, 388 N.Y.S.2d at 988, 989.

■ Clearly Congress intended by 38 U.S.C. § 717(a) to give covered service veterans the freedom to name and to change beneficiaries at will. The New York court, however, was unwilling to read into Congress' act the further intent to provide these veterans a means of avoiding legitimate obligations against which their creditors would have no recourse.

It is difficult to conceive that the intent of Congress was to provide a vehicle by which a husband could ... leave the wife without recourse to enforcing the support obligation of the husband ... If Congress intended to infringe upon a common law right to seek recovery from the assets of a decedent's estate for satisfaction of an obligation which one incurred during his lifetime, the statute so declaring the Congressional intent should explicitly state the intended prohibition.

*Id.* at 988, 989.

■ Other state courts have come to different conclusions. *See, e.g., Matter of Pechman*, 532 P.2d 385 (Colo.Ct.App.1974). While the Colorado court chose to find a blanket federal preemption foreclosing even a cause of action against the estate of an NSLI insured, such a result is by no means compelled by the federal statute itself or by the relevant federal case law. South Dakota may choose to permit the enforcement of valid contracts and valid state court decrees obligating NSLI insureds without running afoul of preemptive federal law.

In this case, the trial court rejected Betty's motion to amend the complaint holding that any claim, even a breach of contract claim, is preempted by federal law. However, this is not consistent with the federal decisions cited above. Thus, in this regard, the trial court erred and we reverse and remand.

■ At the minimum, Ray has an obligation to Betty arising from 1) the contract of the parties under SDCL 20–1–2(1), 2) operation of law under SDCL 20–1–2(2), or 3) the court-approved agreement under *Hanks v. Hanks*, 334 N.W.2d 856 (S.D. 1983). Ray's breach of the terms of the court-approved agreement gives rise to an independent right or cause of action. Upon Ray's death, this obligation is binding against his estate, just as a decedent's estate would be liable in quantum meruit for money loaned or services provided. The amount of the obligation is clearly controlled by the agreement at $10,000, plus interest from the date of death.

Reversed and remanded.

MILLER, C.J., and TAPKEN, Circuit Judge, concur.

KEAN, Circuit Judge, concurs in part and concurs in result in part.

HENDERSON, J., dissents.

TAPKEN, Circuit Judge, sitting for WUEST, J., disqualified.

KEAN, Circuit Judge, sitting for MORGAN, J., disqualified.

KEAN, Circuit Judge (concurring in part and concurring in result in part)

I agree that this case should be reversed and remanded. I believe the majority opinion adequately describes the federal preemption concepts which apply to this matter. However, I disagree with the majority

opinion that Betty is entitled to an automatic judgment upon remand for the sum of $10,000.00 plus interest as I believe a more equitable approach should be taken based upon a more fully developed record.

Betty's claim against the estate cannot be founded upon SDCL 20-1-2(1). This code provision states that an obligation may arise from a "contract of the parties." But, the Settlement Agreement is not a contract. It was written in *Hanks v. Hanks*, 334 N.W.2d 856, 857 (S.D.1983):

> This ... obligation is not the consequence of contract or agreement between the parties, but is an obligation created by the court for the division of the property interests of the parties.

*In accord, Johansen v. Johansen*, 365 N.W.2d 859 (S.D.1985).

The majority then declares that Betty's obligation may arise either under the *Hanks* decision or SDCL 20-1-2(2) (obligation by operation of law). I do not disagree in general with that part of the writing for Betty's claim has to be grounded in some right which she can legally enforce. But the obligation which can be enforced should not be used to also define the extent of the monetary claim sought under the obligation. For in doing so a large body of equitable principles are being ignored. It also ignores the federal law which preempts either state laws or obligations created by state courts which might interfere with one's right to change a beneficiary on a NSLI policy.

The majority opinion cites the case of *In re Will of Hilton*, 88 Misc.2d 760, 388 N.Y.S.2d 985 (N.Y.Sur.Court 1976) as authority for its position. The Surrogate Court in New York allowed the wife to file a claim against the estate for the full value of the face amount of the NSLI policy and in doing so reasoned:

> The act of the decedent [herein Ray] in changing the beneficiary of the policy from his former wife to his widow constituted a fraud upon his former wife which cannot be countenanced by a court of equity....

*Id.* at 989. But this reasoning that a fraud had been committed was specifically rejected five years later in *Ridgway v. Ridgway*, 454 U.S. 46, 102 S.Ct. 49, 70 L.Ed.2d 39 (1981). The majority so notes by writing: "Also, his conduct could not be fraudulent because he had the authority to change the beneficiary, and, a person cannot commit a fraud by exercising a given statutory power." With this in mind, I question the value of the *Hilton* decision in giving Betty an automatic right to the full amount of her claim—not that she is prevented from making a claim—just the extent without a better record.

Both divorce proceedings and probate proceedings are equitable in nature. Cases decided prior to the creation of the South Dakota Unified Judicial System in 1975 consistently held that circuit courts had unlimited equity jurisdiction in probate matters, *Spitzer v. Spitzer*, 84 S.D. 147, 168 N.W.2d 718 (1969); *Lass v. Erickson*, 74 S.D. 503, 54 N.W.2d 741 (1952), although the assumption of such jurisdiction was to be used only when the (then existing) county court was unable to afford adequate relief.

With the adoption of the Unified Judicial System, S.D. Const. art. V, § 11, and, SDCL 16-2, the county courts were abolished. Now, the original jurisdictional authority "In all matters of probate, guardianship and settlement of estates of deceased persons" rests within the circuit court exclusively. SDCL 16-6-9(5). Moreover, the circuit court has the original authority as to "all actions or proceedings in chancery" and "all actions at law and in equity." SDCL 16-6-9(1) and (2). Since the probate, estate and divorce functions are now merged into one court, there is no reason why the circuit court cannot apply equitable principles where necessary in order to achieve a proper and just result. I find nothing in SDCL 16-2, 16-6, or the S.D. Const. art. V, § 11 which changes the pre-1975 case law which pronounced that these matters are all equitable in nature and that the rules of equity apply.

Granting relief from an error, whether it be error of law or fact, is within the exclusive jurisdiction of equity and is one of the most familiar functions of equity. *Spoon-*

*Shacket Co. v. Oakland County*, 356 Mich. 151, 97 N.W.2d 25 (1959). An attempt has been made to distinguish the type of error, and, general rules developed that equity will not relieve a party of an error at law, *Bakke v. Bakke*, 242 Iowa 612, 47 N.W.2d 813 (1951), but will grant relief from an error of fact. *Minnesota Mut. Fire & Cas. Co. v. Rudzinski*, 347 N.W.2d 848 (Minn. App.1984). *See generally*, 27 Am.Jur.2d *Equity* §§ 31 and 37 (1966). These distinctions have been viewed as artificial, unnecessary and unworkable. In the case of *Moritz v. Horsman*, 305 Mich. 627, 9 N.W.2d 868 (1943), a case involving an attempt to recover money paid through an error of law to a legatee, the court noted that "It is well nigh impossible to reconcile the many cases allowing or denying recovery caused through a mistake of law." *Id.* at 869. The court continued:

[W]here a person is 'ignorant or mistaken with respect to his own antecedent and existing private legal rights, interests, or estate, and enters into some transaction, the legal scope and operation of which he correctly apprehends and understands, for the purpose of affecting such assumed rights, interests, or estates, equity will grant its relief, defensive or affirmative, treating the mistake as analogous to, if not identical with, a mistake of fact.'

*Id.*

This is a unique appeal. But, the uniqueness of Betty's position and the lack of case authority specifically on point does not prohibit her from seeking redress for the mutual error of the parties at the time the Settlement Agreement was signed. Nor does it prevent this court from fashioning a remedy for Betty. Equity is a system of positive jurisprudence founded upon established principles which can be adapted to new circumstances where a court of law is powerless to give relief. 1 Pomeroy, *Equity Jurisprudence* 78 (5th Ed.). In *Dodd v. Reese*, 216 Ind. 449, 462, 24 N.E.2d 995, 999 (1940), relatives of an elderly, senile woman sought to set aside an adoption claiming that the consent to adopt and the whole proceeding had been procured by fraud all which had been orchestrated by Dodd, the elderly woman's lawyer. Dodd sought to intervene, but the request had been denied. In reversing the Indiana Supreme Court held that a party may seek the aid of equity to "protect a cherished and valuable right, and to prevent a great injury or wrong [suffered]" by a person. *Id.* The fact there was no precedent for the relief sought was of no great significance, as the court wrote:

[A] court of equity does not depend upon the mere accident of the court having in some previous case, at some distant time, granted relief under similar circumstances. If it were so, equity would not have grown and developed.

*Id.*

The Iowa Supreme Court has held in similar fashion that

[O]ur equity jurisdiction allows us the necessary reach and flexibility to work out the equities of the parties. Hence, if we find a situation that is contrary to equitable principles and can be redressed within the scope of judicial action, we may devise a remedy to meet it, though no similar relief has ever been given.

*Becker v. Central States Health and Life*, 431 N.W.2d 354, 356 (1988).

And in *Spoon–Shacket Co. v. Oakland County, supra*, it was held:

The true function of precedents is that of illustrating principles; they are examples of the manner and extent to which principles have been applied; they are the landmarks by which the court determines the course and direction in which principles have been carried. But with all this guiding, limiting, and restraining efficacy of prior decisions, the Chancellor always has had, and always must have, a certain power and freedom of action, not possessed by the courts of law, of adapting the doctrines which he administers. He can extend those doctrines to new relations, and shape his remedies to new circumstances, if the relations and circumstances come within the principles of equity, where a court of law in analogous cases would be powerless to give any relief. In fact, there is no limit to the

various forms and kinds of specific remedy which he may grant, adapted to novel conditions of right and obligation, which are constantly arising from the movements of society.

97 N.W.2d at 32.

There was an obvious mutual mistake of law. Betty and Ray both misunderstood the impact of federal law upon Ray's NSLI policy. If Betty had known the effect of federal law, she naturally would have sought other assets from the divorce estate. If Ray had known the true state of law, he would have changed beneficiaries without writing to the VA. But, while I believe that Betty is entitled to make a claim against the estate, I cannot conclude upon this existing record whether this claim should be allowed in whole or in part only, for the times, parties and circumstances have changed. Equity looks to substance rather than form and seeks to prevent an injustice and arrive at a decision which is consistent with the dictates of the facts at hand. *Petty v. Mutual Benefit Life Ins. Co.*, 235 Iowa 455, 15 N.W.2d 613 (1944). And a person who requests that equity be done must also herself do equity. *Beadle County v. Hinckley*, 69 S.D. 381, 10 N.W.2d 757 (1943). In this regard here are some factors I believe the trial court should consider on remand:

> The value of the net estate should be calculated. A determination should then be made as to how Betty's claim will affect the estate and those who are to receive thereunder. Will allowance of the whole claim work a hardship upon the widow? Does the widow have special needs which can only be met by giving Betty a reduced claim? Does Betty have particular needs which should also be addressed? What impact will allowing Betty's claim have upon other legatees? There is no evidence of record on any of these facts and there is a need for the trial court to hear evidence. And the trial court should understand that the inquiry need not be limited to the above items, but any facts which affect the equities of the parties involved should be reviewed. For in deciding Betty's claim we do not desire a result which may leave her whole, but cause a harmful situation to arise to other third parties who are in this lawsuit only because of their relationship to Ray. That would not be equitable either.

Finally there is a matter the majority does not mention. Betty and the estate disagree over the timeliness of Betty's claim in addition to the merit of the claim. It was written in the trial court's decision that "the court need not address the Estate's assertion that Betty's claim was not timely filed." As the trial court did not rule on this issue, no substantial right on the timeliness of the claim has been affected and no appeal lies therefrom in the context of the matter now before this court. SDCL 15–26A–3; *Johnson v. Straight's, Inc.*, 288 N.W.2d 325, 328 (S.D. 1980). It should also be noted that Betty challenged the constitutionality of the creditor's claim statute, SDCL 30–21–17, in view of *Tulsa Prof. Collection Servs. v. Pope*, 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988). However, this untidy record fails to disclose whether the attorney general has been notified of this challenge under SDCL 15–6–24(c). Ordinarily, this court will not rule upon such a challenge unless notification is given. *Sharp v. Sharp*, 422 N.W.2d 443, 446 (S.D.1988).

HENDERSON, Justice (dissenting).

In *Johansen v. Johansen*, 365 N.W.2d 859 (S.D.1985), we held, inter alia, that ... "obligations credited under settlement agreements that become decreed property dispositions are not based on contracts or agreements between the parties; but rather they are obligations ordered by the Court." *See also, Hanks v. Hanks*, 334 N.W.2d 856 (S.D.1983). If we stand by precedent, the majority opinion crumbles.

I call attention to SDCL 53–9–1 which provides:

> A contract provision contrary to an express provision of law or to the policy of express law, though not expressly prohibited or otherwise contrary to good morals, is unlawful.

Therefore, if the majority opinion can rely on a "contract" (which it cannot under settled South Dakota law), the "contract" is also contrary to United States Supreme Court decisions, and the express enactment of the United States Congress. Perforce, the "contract" is contrary to the *national* "policy of express law" and SDCL 53–9–1. Therefore, this Court has no jurisprudential authority to frustrate the deliberate purpose of the United States Congress nor to nullify the serviceman's choice by a circuitous design, fluidity of words, and misinterpretation of United States Supreme Court decisions nor should it oppose South Dakota Supreme Court opinions and a state statute.

The majority opinion simply frustrates the holding in *Ridgway v. Ridgway*, 454 U.S. 46, 102 S.Ct. 49, 70 L.Ed.2d 39 (1981). The 1976 decision in the State of New York, *Will of Hilton*, upon which the majority opinion relies upon so heavily, pales under the *Ridgway* decision, which was decided approximately five years after the New York State Court decision.

It is obviously the judgment of this Court, under a three Justice plurality decision, that there is a fixed, rigid adjudication (judgment) of $10,000 plus interest. Thus, it is for the exact amount of the serviceman's policy plus interest. By legal mirrors, a leap of logic is developed in the majority opinion: We hold that South Dakota's courts may not prohibit the owner of a NSLI policy from changing the beneficiary as he or she desires—and then do the opposite. I agree with this statement in the majority opinion: "Clearly Congress intended by 38 U.S.C. § 717(a) to give covered service veterans the freedom to name and to change beneficiaries at will."

Now to the Colorado case, dusted off by the majority opinion. *In Re Estate of Pechman*, 532 P.2d 385 (Colo.App.1975). It expresses:

The estate correctly asserts that the portion of the divorce decree purporting to direct the disposition of the National Service Life Insurance proceeds is void and can therefore be collaterally attacked in the probate court. National Service Life Insurance is a contract made in pursuance of federal statute and must be construed with reference to such statute,[1] the regulations promulgated thereunder, and the decisions applicable thereto, rather than by laws and decisions governing private insurance companies. *Kauffman v. Kauffman*, 93 Cal.App.2d 808, 210 P.2d 29.

Any order in a divorce decree purporting to restrict the right of the policyholder of National Service Life Insurance to change the beneficiary, at any time under any circumstances, is void and unenforceable. *Wissner v. Wissner*, 338 U.S. 655, 70 S.Ct. 398, 94 L.Ed. 424; *Hoffman v. United States*, 391 F.2d 195 (9th Cir.); *Williams v. Williams*, 255 N.C. 315, 121 S.E.2d 536; *Kauffman v. Kauffman, supra.* It was on this basis that we previously held that the courts of Colorado have no jurisdiction to exercise any control over the designation of beneficiaries under National Service Life Insurance policies. *Reed v. Reed*, 29 Colo.App. 199, 481 P.2d 125 (citing *Heifner v. Soderstrom*, 134 F.Supp. 174 (N.D.Iowa)). Therefore, we hold in this case that the divorce court never obtained jurisdiction to enter any orders relative to the specific subject matter and that the portion of the divorce decree which attempted to do so was void ab initio, as opposed to merely voidable, and, therefore, can be collaterally attacked in the probate court. Estate of *Lee v. Graber*, 170 Colo. 419, 462 P.2d 492. The claim therefore, having no valid basis, should have been disallowed.

The Court of Appeals of the District of Columbia, which gives firmament to my dissent, has held:

We are of the opinion that the agreement, alleged in the amended bill of complaint to have been entered into by the plaintiff and the insured, *was invalid*, insofar as it affected the right and au-

---

**1.** The two sections of the Federal Statutes applicable to the instant problem are found in 38 U.S.C. § 3101(a) and 38 U.S.C. § 717(a).

thority of the insured to change the beneficiary under the contract of insurance. *To hold otherwise would do violence to the plain and ordinary meaning of the language expressive of the legislative intent.* (Emphasis added.)

*Von Der Lippi–Lipski v. United States, et al.,* 4 F.2d 168, 169 (CADC 1925).

In *Kimball v. United States, et al.,* 304 F.2d 864 (6th Cir.1962), the issue was stated thusly:

> The issue in this case is whether an insured veteran under a United States Government of Life Insurance Policy can effectively contract away his right to change the beneficiary of his policy. p. 864.

Indeed, the case is in point as it involved a divorce with an agreement incorporated into the divorce decree whereby the veteran was to maintain the said life insurance policy and his former spouse as the beneficiary thereon. The District of Columbia Court of Appeals held, in effect, that a veteran cannot contract away his statutory right, referring to the "concise and comprehensive opinion" of the district court which is reported in *Kimball v. United States et al.,* 197 F.Supp. 124 (N.D.Ohio 1961).

In yet another case involving a divorce decree requiring the insured veteran to maintain his former wife as the sole beneficiary of his National Service Life Insurance policies, where the veteran had subsequently changed the beneficiary designation, the United States Court of Appeals for the Ninth Circuit expressly held that a state court does not have the power to effectively require a veteran to maintain a former wife as beneficiary on NSLI policies therein quoting and following *Wissner, supra; Hoffman v. United States,* 391 F.2d 195 (9th Cir.1968).

All of appellant's various theories (her Motion to Amend on breach of contract was never granted; appellee has not been given an opportunity to file answer thereto) come pouring out of a provision of the Divorce Decree. The provision orders Ray Milliken to maintain her as beneficiary of his NSLI policy. All claims, emanating therefrom, must therefore fail.

I would affirm the trial court.